Cornelius O'Reilly, Plaintiff in Error, *v.* The People of the State of New York, Defendant in Error.

To constitute a valid oath, for the falsity of which perjury will lie, there must be an unequivocal and present act in some form in the presence of an officer authorized to administer oaths, by which the affiant consciously takes upon himself the obligation of an oath.

The mere delivery of an affidavit, signed by the person presenting it, to the officer for his certificate, is not such an act.

Upon the trial of an indictment charging perjury in swearing to an affidavit, defendant's evidence tended to show that no words passed between the accused and the officer; that he simply handed the affidavit signed by him to the officer, who affixed his own name to the jurat. The affidavit began thus: " C. O'Reilly, being duly sworn, saith." The trial court charged in substance that these words, handed to the officer, were equivalent to a declaration by the prisoner that he swore to the truth of the statements in the affidavit, and if the prisoner delivered the affidavit to the officer to have it certified as sworn to before him, " intending thereby to declare * * * that by oath he intended to verify and did verify the statement subscribed by him," and the officer regarding him as so declaring, signed the jurat for the purpose of evidencing the verification and delivered it to the prisoner who subsequently used it for the purpose intended ; that then " the oath was duly and lawfully administered." *Held*, error.

(Argued May 30, 1881; decided October 4, 1881.)

Error to the General Term of the Supreme Court, in the third judicial department, to review judgment entered upon an order made the first Tuesday of May, 1881, which affirmed a judgment of the Court of Oyer and Terminer of the county

of Albany, entered upon a verdict convicting the plaintiff of the crime of perjury, in verifying an affidavit attached to an account presented by the prisoner, to the board of supervisors of the county of Albany. The affidavit was as follows:

" STATE OF NEW YORK, } 
*City and County of Albany.* }

C. O'Reilly, being duly sworn, saith that the items of the within account are correct, that the material, services, etc., charged therein has been in fact furnished and that no part thereof has been paid or satisfied. C. O'REILLY.

Sworn before me this 24th }
 day of Nov. 1880. }

     JEREMIAH KIELEY, *Comr. of Deeds.*"

The material facts are stated in the opinion.

*Rufus W. Peckham* for plaintiff in error. An oath requires some ceremony, some form of words to be used in calling God to witness as to the truth of the testimony about to be given. It cannot be taken in silence. (1 Phil. on Ev. [C. & H. and Edw. notes], 15, 17; 1 Greenl. on Ev., § 328; Tyler on Oaths, 15; 1 Best on Ev., §§ 56, 58; American notes, by H. G. Wood; 1 Starkie on Evidence, 23, 24; 3 Ins. 165; 3 Whart. Am. Cr. Law, § 2205; *Tuttle* v. *People*, 36 N. Y. 431; *Campbell* v. *People*, 8 Wend. 636.) Some outward form or ceremony is necessary in the administration of an oath. (2 Bish. Cr. Law, § 1018; *Ashburn* v. *The State*, 15 Ga. 246; *The State* v. *Trask*, 42 Vt. 152; 1 Allison's Cr. Law, 474; 1 Greenl. on Ev., § 371; 1 Starkie on Ev., § 23; 1 Phil. on Ev. [C. & H. and Edwards' notes], 17, 18; *Jackson* v. *The State*, 1 Ind. 184; *State* v. *Norris*, 9 N. H. 96; 1 Best on Ev., §§ 162, 163 [American Notes, by H. G. Wood]; 3 Whart. Am. Cr. Law, § 2205; 1 Arch. Cr. Pr. and Pl. 487, note [§ 3, title " Parol Evidence " ]; 2 R. S. 407, § 82; *Maher* v. *The State*, 3 Minn. 444; Code of Civil Proc., § 845.) The nature of an oath, or its form or mode of administration, is not altered because the oath is made to a paper called an affidavit, and is administered

by an officer who is authorized by law to administer an oath, and to certify to the fact that such oath has been administered. (Bacon's Abridgment, title "Affidavit;" *Case* v. *The People*, 76 N. Y. 242, 245; *Haff* v. *Spicer*, 3 Caines, 190; *Jackson* v. *Virgil*, 3 Johns. 540; *Millius* v. *Shafer*, 3 Denio, 60; *People, ex rel. Kenyon*, v. *Sutherland*, 81 N. Y. 1, 8, 9; 1 Hale's Pleas of the Crown, 34; 1 Arch. Cr. Pr. and Pl. 491, title Evidence, "Deaf and Dumb Persons;" *Cowley* v. *The People*, 23 Alb. L. J. 173–182; *People* v. *Cook*, 8 N. Y. 67, 84.) The court erred in submitting to the jury to find, from the evidence, whether there was an intent on the part of the prisoner to swear to the paper without any words being said by either party. (*Rex* v. *Crossley*, 7 T. R. 315; Bacon's Abridgment, title "Perjury," *b*.) In a criminal case, as in a civil case, presumptions may be indulged in, and the performance of an act may be presumed, under certain circumstances, as a proper presumption from proof of the existence of certain other facts. (*Clayton* v. *Wardell*, 4 N. Y. 230; *Foster* v. *Hawley*, 8 Hun, 68.) The court erred in not charging, as requested by the counsel for the prisoner, that the act permitting defendants, on the trial of indictments, to be witnesses was unconstitutional. (*Erben* v. *Lorillard*, 19 N. Y. 299; *People* v. *Ruloff*, 45 id. 213, 221; *Connors* v. *The People*, 50 id. 240, 24, 243.)

*D. Cady Herrick* for respondent. No particular form of oath is necessary. (Wharton's Cr. Ev. [8th ed.], § 354; *Rex* v. *Broderibb*, 6 C. & P. 571.) An oath is valid and binding although irregularly administered. (*People* v. *Cook*, 8 N. Y. 67; *Queen's Case*, 2 B. & B. 284; 3 Strobhart [S. C.], 147.) An affidavit is a written oath sworn to by the affiant. (81 N. Y. 1.) Any bodily assent to the oath is a sufficient swearing. (*State* v. *Norsie*, 9 N. H. 96.) Signing a written oath, which in terms describes the affiant as thus swearing, handing it to an officer qualified to administer oaths, the affiant having previously expressed his desire to be sworn, and the parties meeting together for that purpose, is giving an assent; and his subsequent use of it as an oath is a continuing assent to it. (Opin-

ion, WESTBROOK, J., in *People* v. *O'Reilly.*) The question as to whether the prisoner intended by his acts to have the commissioner understand that he ᴿswore to the affidavit was properly left to the jury. (*State* v. *Whittenhurst,* 2 Hawks, 458.)

FINCH, J. The evidence on behalf of the prisoner tended to prove, that on the occasion of the alleged perjury, no words passed between the officer and the accused, and what was done consisted only of the latter's signature to the jurat, which he thereupon handed to the officer who affixed his own name to the certificate in silence. The force of this evidence was weakened, if not entirely destroyed, by the charge of the court. The learned judge who presided at the trial, with great care and deliberation, laid down a rule for the guidance of the jury, which is now assailed as erroneous. He stated it first in the form of an abstract proposition, and then applied it to the facts of the case on trial. In making such application he said : " If O'Reilly delivered the bill and the affidavit to Kieley *to have* the same certified to by Kieley *as sworn to* before him, *intending* thereby to declare to said Kieley that by oath, he *intended* to verify and did verify the statement subscribed by him, and the officer, *regarding* him as so declaring on oath, signs the certificate and jurat *for the purpose* of evidencing the verification, and then delivers it to the party in that form verified, and the party presents it in that form and shape to the board of supervisors *for the purpose* of procuring the audit of the bill, then I charge you that the oath has been duly and lawfully administered.'' The criticism to which this proposition is subjected by the argument at the bar is in substance, that any form of an oath is rendered unnecessary, and the intention to swear is put in the place of the oath actually administered and taken. The criticism is just, precisely so far as it is true. Some form of an oath has always been required, for the double reason that only by some unequivocal form could the sworn be distinguished from the unsworn averment, and the sanctions of religion add their solemn and binding force to the act. (Pandects, xii, 2 ; 3 Coke's Inst. 165 ; 1 Phil. on Ev. 15 ; 1 Starkie

on Ev. 23; Lord Hardwicke, in *Omychund* v. *Barker*, 1 Atkyns, 21; Tyler on Oaths, 15; 1 Greenleaf on Ev., §§ 328, 371; 1 Alison's Crim. Law, 474; 3 Wharton's Am. Crim. Law, § 2205; 2 Arch. Crim. Pl., 1723.) While these sanctions have grown elastic, and gradually accommodated themselves to differences of creed, and varieties of belief, so that, as the Christian is sworn upon the Gospels, and invokes the Divine help to the truth of his testimony, the Jew also may be sworn upon the Pentateuch, the Quaker solemnly affirm without invoking the anger or aid of Deity, and the Gentoo kneel before his Brahmin priest with peculiar ceremonies, yet through all changes and under all forms the religious element has not been utterly destroyed. So lately as the case of *People, ex rel. Kenyon*, v. *Sutherland* (81 N. Y. 8), the taking of an oath is described as burdening the conscience. Some form of an oath would, therefore, seem to be essential. It is almost as difficult to conceive of an act of swearing without any form as of a material substance having neither shape nor locality. The changes of form incident to the growth of nations and of commerce have been serious, but have not dispensed with a form entirely. These changes are recognized and crystallized in our statute. (3 R. S. [5th ed.] 692.) The usual mode of administering oaths by the person who swears, laying his hand upon and kissing the Gospels, is first recognized, and that form prescribed as the general rule, and except as afterwards provided. (§ 114.) Then follow the exceptions. There were persons who, on the one hand, were unwilling to invoke either the vengeance or the help of the Divine Being, and those who believed in Him without believing in the Gospels or even in the Bible at all. The statute, therefore, next permits an oath to be administered in this form: " You do swear in the presence of the ever-living God." (§ 115.) The religious element is here preserved, since, in the absence of imprecation or invocation, the oath is taken as in the presence of the Supreme Being. But there were those whose conscience would not permit them to swear at all. To meet that emergency, the statute allows as a form: " You do solemnly, sincerely and truly declare and

affirm." (§ 116.) Then follow provisions to meet the cases of persons who have peculiar forms which they recognize as obligatory, and believers in other than the Christian religion. Such persons may be sworn in their own manner, or according to the peculiar ceremonies of the religion which they profess. (§§ 117, 118.) There remained, however, the case of infidels and unbelievers. For them there could be no religious element in an oath and no sanctity behind it. At first the inevitable result followed of their exclusion from the witness stand. But such rule of exclusion was soon modified, so as to protect them against personal inquiry, and finally, substantially abrogated by the constitutional provision rendering them no longer incompetent "on account of their opinions in matters of religious belief." But this is a rule which merely shuts the door on inquiry. It neither dispenses with some form of an oath, nor changes its inherent character. It assumes that the affiant recognizes the sacred and solemn nature of his obligation, and will permit neither inquiry nor contradiction. If there be something inconsistent in this mode of meeting the difficulty, the remedy must be applied elsewhere. But the statute goes one step further. It provides, generally, that a person sworn by any of the forms prescribed, "or in any form authorized by law," shall be deemed to have been lawfully sworn; and this court has held that any form adopted, if not objected to by the affiant, is deemed to have received his assent and renders him liable to the consequences of perjury as if the oath had been administered in strict conformity with the statute. (*People* v. *Cook*, 8 N. Y. 84.) A wide scope, a large liberty, is thus given to the form of the oath, but some form remains essential. Something must be present to distinguish between the oath and the bare assertion. An act must be done, and clothed in such form as to characterize and evidence it.

It is argued that the charge of the court ignores this necessity, and puts in the place of the act of taking the oath, and its administration by the officer, the intention of the one and the supposition of the other. That portion of the charge which we have quoted, and the statement of the rule made during the

trial, seem to us fairly to justify the criticism. The only act referred to is the delivery of the bill and affidavit to the officer. If that is done *for the purpose* of getting the officer's certificate and *with the intention* of declaring to him that the affiant does verify the statement he has subscribed, and the officer *regards* him as so declaring on oath, that, followed by the certificate of the officer and the use of the affidavit, is held to be sufficient. But we think the language cited does not, by itself, fairly represent the proposition presented to the jury, and should be construed in connection with other parts of the charge, which more fully explain its meaning. Thus construed, it rests upon something more than a mere intention, and does not ignore the necessity of an act of swearing and some form of the oath. The reasoning of the learned judge makes his meaning very plain. He relies upon the language of the jurat which the prisoner signed and handed to the officer. That language was as follows: "C. O'Reilly, being duly sworn, saith that the items of the within account are correct," etc.; and the argument is that these written and printed words handed to the officer were as effectual as if the accused had said in spoken words, "I swear that the items of the within account are correct," etc.; in other words, that an audible utterance is not essential, and the oath may be taken by the pen as well as by the tongue. The last proposition may, possibly, be true and not confined to cases of necessity, and yet the inquiry remains, and is the final and determining question in the case, whether the mere delivery of these written words, signed by the accused, to the officer for his certificate, constitutes an oath taken, and is the sufficient equivalent of an express and present declaration that the affiant swears to the truth of his statement. If such be the fact, it is difficult to sustain our decision in *Case* v. *The People* (76 N. Y. 242). In that case the accused signed the jurat and sent it to the notary for his signature. The delivery to the officer was a delivery by Case, although effected through the agency of a third person. That fact cannot change or modify the principle, as it affects the affiant. It might and would touch and influence the duty of the officer in giving his

certificate. But the certificate is not the oath. It pre-supposes an oath already taken, of which fact it but furnishes the evidence. It is the written words, signed and consciously and purposely delivered to the officer, which work the result. It is that delivery which converts the previously unsworn words into a valid affidavit. How is the inherent character of the affiant's act in any wise changed, modified or altered by such delivery through an agent instead of in person. The difference suggested to us is, that in the latter case the officer and affiant do not meet, and the oath is not taken before, that is, in the presence of the officer. While that fact is mentioned in the opinion, it is not made the definite ground of the decision, which takes a much wider range, and goes upon the theory that no oath was taken at all. The fundamental difficulty, whether the affidavit be delivered in either mode, seems to us to be that the act of delivery is equivocal, and just as consistent with an intention not to swear, though appearing to have been sworn, as with an intention to assume the obligation of an oath; and this difficulty is intensified when, as in the present case, the language written and signed and delivered to the officer, is not "I do hereby swear," or "do depose and say," but "being duly sworn, saith." The language recites an oath previously taken, already administered. It does not purport to be the present oath then and there taken. It confesses a past act, an obligation already assumed. It does not profess to be itself the act or obligation. Such a construction of it is strained and unnatural. It would be hard to find an officer who would understand, upon reading such phrase, that an oath had already been administered by himself, and his sole duty was to certify the fact in silence; and we are required to believe that officers have been daily administering a second and superfluous oath when a sufficient one was already before them in writing. We think the charge went too far, and are not ready to affirm the proposition advanced. To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously takes upon

himself the obligation of an oath. The delivery in this case of the signed affidavit to the officer was not such an act, and was not made so by the intention of the one party or the supposition of the other.

For these reasons the judgment should be reversed and a new trial granted.

All concur, except FOLGER, Ch. J., absent from argument. Judgment reversed.