## PEOPLE v. ROOT.

(Supreme Court, Appellate Division, Fourth Department.  May 3, 1904.)

1. PERJURY—INDICTMENT—SUFFICIENCY—CODE.

An indictment charging that defendant falsely, "knowingly, and corruptly did declare, testify, and give" certain evidence sufficiently alleges that he knowingly testified falsely, under Code Cr. Proc. § 291, declaring that, in an indictment for perjury, it is sufficient to set forth the substance of the controversy, with proper allegations of the falsity of the matter on which the perjury is assigned.

2. SAME—FALSE TESTIMONY—MATERIALITY.

Defendant, in a prosecution for perjury as to three different assignments arising out of his testimony on the trial of a friend of his, charged with rape—defendant being the principal witness in an effort to prove an alibi—was charged with having falsely testified to having made a contract some time previous to the date of the rape for the delivery of certain property, and of its delivery on the date of the rape; also to having made a contract with another person on the date of the rape, and to having met his accused friend at a place 20 miles distant from the place of the crime, and to having been with him there at the time the crime was alleged to have been committed.  *Held*, that each assignment was material; it appearing that, by means of the first two portions of the alleged false testimony, defendant might have established his credibility as to the third.

3. SAME—VERDICT—EVIDENCE—SUFFICIENCY.

On a prosecution for perjury, where there were three different assignments of alleged false testimony, and in the first two assignments defendant reiterated the truth of the testimony, and was corroborated by other evidence, which was not successfully controverted by the people, *held*, that a verdict of guilty, without a finding specifying upon which assignment the conviction was had, was contrary to and against the weight of the evidence.

Williams and Stover, JJ., dissenting.

Appeal from Trial Term, Cattaraugus County.

Ahira I. Root was convicted of perjury.  From the judgment, and an order denying a motion for a new trial, defendant appeals.  Reversed.

The defendant was indicted by the grand jury of Cattaraugus county at the September, 1903, Trial Term of the Supreme Court, held in and for said county, for the crime of perjury, for having, as alleged, at the June, 1903, Trial Term of the Cattaraugus County Court, testified falsely upon the trial of an indictment which charged one Charles S. Boyce with having committed the crime of rape and assault in the second degree upon one Mary Evans at West Salamanca, N. Y., where she and Boyce both resided, between 6 and 7 o'clock in the evening of August 7, 1902.  The indictment alleged, the defendant "minding and maliciously intending unlawfully and willfully and unjustly to cause the said Charles S. Boyce to be acquitted of said offense, * * * on the trial of said issue before the said court, falsely, wickedly, maliciously, unlawfully, willfully, knowingly, and corruptly did declare, testify, and give evidence, amongst other things, in substance and to the effect following; that is to say." Then follows the evidence alleged to have been given by the defendant upon such trial, and which it is claimed was false. The indictment then charges that each and every part and item of the testimony so given became and was material to and upon the trial of said issue, to wit, the guilt or innocence of Boyce.  The indictment was duly transferred to the County Court, and upon being arraigned the defendant pleaded "Not guilty," and interposed a demurrer to the indictment, challenging its sufficiency upon the following grounds:  (1) The facts stated in said indictment do not constitute a crime; (2) that more than one crime is charged in said

indictment; (3) it is not alleged in the indictment that he (the defendant) willfully and knowingly testified, declared, deposed, or certified falsely in any material matter in the action mentioned in the indictment which he knew to be false. The County Court overruled the demurrer, to which ruling the defendant excepted. Thereupon the trial proceeded, and resulted in the conviction of the defendant of the crime as charged in the indictment.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

J. N. Congdon, for appellant.

George W. Cole, Dist. Atty., for the People.

McLENNAN, P. J. The questions presented by this appeal are: (1) Is the indictment defective in any essential particular? (2) Were the assignments of perjury (three in number) which were submitted to the jury by the learned trial court material, and such as to be made the basis of a conviction of the crime of perjury, even if false, and known to be so by the defendant? (3) Did the evidence justify the conviction of the defendant upon each of such assignments, or was the verdict of guilty contrary to or against the weight of the evidence upon any of them? (4) Did the learned trial court, by its rulings during the progress of the trial, commit error which was prejudicial to the defendant, and such as to require the reversal of the judgment?

The learned counsel for the defendant urges that the indictment is defective because, as claimed, it fails to allege that the defendant knew the testimony given by him upon the Boyce trial was false; that the word "knowingly," as used in the indictment, has reference to the words "did testify," and is not an allegation that the defendant knowingly testified falsely, but only charges him with knowing that he was giving testimony under oath upon the trial. We think such is not a fair and reasonable interpretation; that when its many allegations, which are contained in one count, are considered together, the indictment must be held to charge the defendant with having testified to that which he knew to be false. The indictment fully informed the defendant of the precise nature of the crime with which he was charged, of the acts which it was claimed constituted such crime, and the exact manner in which such acts were done or performed; and therefore, even if the indictment was faulty in its grammatical construction, such defect in no manner tended to the prejudice of any "substantial rights of the defendant upon the merits," and therefore should be disregarded. Code Cr. Proc. § 285. We think the indictment is in full compliance with the requirements of section 291 of the Code of Criminal Procedure, and therefore conclude that the demurrer thereto was properly overruled.

The learned trial court submitted to the jury three assignments of perjury viz.: (1) As to whether or not the defendant testified falsely when he stated on the Boyce trial that on July 31st he contracted to sell at Fairbanks' (who conducted a meat market) some hogs and veal calves, and to deliver them on August 7th, and that on August 7th he delivered eight hogs and some calves at the meat market of Fairbanks, on East Second street, in Jamestown; (2) as to whether or not he testified falsely on the Boyce trial when he stated that he contracted on the 7th day of August some hogs to Peterson, who was also run-

ning a meat market; and (3) whether or not he testified falsely when he stated upon the Boyce trial that he met Boyce at Jamestown, and was with him there at about 7 o'clock, or later, on August 7, 1902. The trial court charged the jury, in effect, that, in case they found the defendant had knowingly testified falsely in respect to any one of such assignments, they might find him guilty of the crime of perjury, as charged in the indictment.

It is insisted on behalf of the defendant that at least the first two of such assignments were not material upon any issue involved in the Boyce trial. To fully appreciate the force of defendant's contention, it is necessary that we should understand exactly what issue or issues were involved in the Boyce trial. As we have seen, Boyce was indicted and was upon trial upon the charge of rape and assault in the second degree, alleged to have been committed upon Mary Evans, at West Salamanca, N. Y., between 6 and 7 o'clock in the evening of August 7, 1902. The complainant, Mary Evans, testified to the commission of the crime. Her father, Morris Evans, and his wife, testified that, shortly before the time when the crime was alleged to have been committed, Boyce was with the complainant; and a Dr. Taggert testified that on the morning of August 8th he made an examination of Mary Evans which disclosed facts indicating that a crime had been committed; that he made a memorandum of such examination at the time, and was therefore able to accurately fix the date. Other evidence was given on the part of the people in the Boyce case tending to show that the crime charged against him was committed at that time, to wit, between 6 and 7 o'clock in the evening of August 7, 1902. Boyce denied the charge, and asserted that the occasion when he was with Mary Evans, as testified to by her father and stepmother, was the 9th day of August, 1902, and, as a defense to the charge made against him, insisted and sought to prove that upon the 7th day of August, 1902, the day when he was charged with having committed the crime in question, he was in Jamestown, N. Y., and did not return to West Salamanca until about 8:20 o'clock in the evening of that day, and therefore that he could not have been, and in fact was not, in West Salamanca at the time when he was charged with having committed the crime in question. For the purpose of establishing such defense and alibi, the defendant in this case was the chief witness called by Boyce. This defendant upon that trial testified in substance that on July 31, 1902, he was in Jamestown, N. Y., and on that day contracted with one Fairbanks to deliver to the latter on the 7th day of August, 1902, veal calves and hogs, and that, pursuant to such contract, he did deliver the same on that day, and that he received his pay therefor. He also testified that on the same day, to wit, August 7, 1902, he went to one Peterson's meat market, in the city of Jamestown, at about 5 o'clock in the afternoon, and contracted to sell some hogs for one of his neighbors, a Mr. Ross. The defendant also testified upon the Boyce trial that he met the said Boyce at about 5 o'clock in the afternoon, and, in substance, that he remained with him until after 7 o'clock, and until such time as to make it impossible for Boyce to be in West Salamanca at the time when it was alleged he committed the crime upon Mary Evans.

It is elementary that although testimony may be given by a witness which is false, and which is known by him to be so when given, unless such testimony is material, it may not be made the basis of a conviction for the crime of perjury. If, however, testimony knowingly false be given, which, although relating to a fact which in and of itself is immaterial, tends to corroborate a material fact to which a witness has testified, and tends to give him a credibility with the court or jury, such testimony may be made the basis for his conviction of the crime of perjury. Wharton's Crim. Law (7th Ed.) vol. 2, § 2229; Greenleaf on Evidence, vol. 3, § 195.

In Bishop's New Criminal Law, vol. 2, § 1037, it is said:

"Where the evidence is simply to explain how the witness knew the thing he states, as where, in testifying to an alibi, he mentions the party's residence and habits, to show he could not be mistaken on the main point, since this incidental matter may incline the jury more to credit the substantial, it will sustain a conviction for perjury if willfully false."

Upon the trial of an indictment for perjury, it is not necessary that false statements should tend directly to prove the issue in order to sustain a conviction. If the matter falsely sworn to is circumstantially material, or tends to support and give credit to the witness in respect to the main fact, it is perjury. Wood v. People, 59 N. Y. 117.

Upon the trial of the Boyce case, one of the most material issues to be determined by the jury was whether or not Boyce was in Jamestown at the time when he was charged with having assaulted Mary Evans at West Salamanca. Boyce sought to prove that he was not in West Salamanca at the time in question—sought to prove an alibi—and the defendant was his chief witness upon that issue. The defendant and Boyce were old friends and acquaintances, but had only seen each other infrequently for several years prior to the day in question, owing to the fact that the defendant resided in Pennsylvania, more than 20 miles distant from Jamestown, where Boyce frequently went on business, and quite as distant from West Salamanca, where Boyce resided. It added very much, or may have done so, to the credibility of the defendant's story, that he met Boyce in Jamestown on August 7, 1902, and was with him there on the evening of that day until such time as made it impossible for Boyce to be in West Salamanca at the time when he was charged with assaulting Mary Evans, by stating that he went to Jamestown on the day in question upon business pursuant to a prior engagement made with reputable business men of that city, and which business was of such a character as reasonably to require him to remain during the entire day. If the defendant, who was a farmer residing more than 20 miles distant from Jamestown, had stated that he went there upon the day in question solely for pleasure, and without any business engagement whatsoever, the jury might have discredited his statement as to the material issue that he met and was with Boyce after 7 o'clock in the evening of that day. But if it appeared as a fact that he was in Jamestown on business, to wit, to deliver hogs previously contracted to Fairbanks, and that about 5 o'clock in the afternoon he contracted for the sale of hogs with Peterson for his neighbor, Ross, it might materially have tended to give his story bearing upon the main issue credence and credibility with the jury;

and, if so, we think, under the authorities cited, such evidence was material, and, if given by him, knowing that the same was false, it constituted the crime of perjury.

It is concluded that each of the three assignments submitted by the learned trial court to the jury was material, and, if false, might properly be made the basis of a conviction for the crime charged in the indictment.

We must next determine whether or not the verdict of the jury was contrary to or against the weight of the evidence upon any one of the three assignments of perjury submitted. If so as to any one, then the verdict must fall, for it is impossible to know upon which assignment the defendant was convicted. We may surmise the jury found the defendant testified falsely when he stated Boyce was in Jamestown after 4 o'clock and until 7 o'clock in the evening of August 7, 1902, and convicted him upon that issue. But the evidence was conflicting upon that issue, and how may we know that the jury did not find that the defendant testified truthfully in that regard, and falsely as to the other propositions submitted to them? In other words, how are we to know that the jury did not convict the defendant because, as they determined, he testified falsely when he stated that he delivered hogs to Fairbanks, and contracted for the sale of hogs to Peterson for his neighbor, Ross, although they may have believed that he testified truthfully when he stated that he was with Boyce in Jamestown after 4 o'clock and until 7 o'clock on the afternoon or evening of August 7, 1902? It would seem to be clear that, in order to sustain the judgment of conviction appealed from, it must be found that the evidence was sufficient to justify a verdict of guilty upon each or any one of the assignments of perjury submitted by the trial court to the jury. While the evidence is clearly sufficient to make it a question of fact for a jury as to whether or not the defendant knowingly testified falsely when he stated that he was with Boyce in Jamestown on the evening of August 7, 1902, we think that upon the other two propositions submitted the people failed to establish by a preponderance of proof—much less beyond a reasonable doubt—the guilt of the defendant. The defendant testified positively that he did deliver hogs to Fairbanks upon the day in question, and he gave considerable evidence in corroboration of such statement. He testified that such delivery was made about 8 o'clock in the morning of the 7th day of August, 1902. His wife and daughter testified that he started from his home in Pennsylvania at about 2 o'clock on the morning of August 7th for Jamestown, and that he took with him a load of hogs for delivery there, and that it would take him about the time from 2 o'clock, when he left home, until 8 o'clock that morning, to reach Jamestown. One H. D. Parker testified that at about 8 o'clock in the morning of August 7th he met the defendant on Third street, in the city of Jamestown, near Fairbanks' meat market, with a team of horses and a light wagon, with a load of hogs, and that at the time the defendant was going in the direction of Fairbanks' meat market; that they stopped and talked some minutes. The witness Parker testified that he is able to fix the date as the morning of the 7th of August, because of a memorandum which he made under the date of August 6th, and which he produced upon

the trial. The only evidence offered by the people to show that the defendant did not deliver hogs to Fairbanks upon that day is that given by Mr. Fairbanks, the proprietor of the meat market. He testified that he had no recollection of the defendant bringing any meat to his market on August 7th, but upon his cross-examination stated: "I am not positive whether Mr. Root [the defendant] delivered those hogs to me then or not. He may have done so, or may not, as far as my recollection is concerned." There is considerable more of Fairbanks' testimony, but the substance of it is that he had no recollection of the delivery of hogs as testified to by the defendant, but he does not attempt to say positively that they were not so delivered. It appears that the defendant did not correctly state the street upon which Fairbanks' meat market was located, and it is urged that this is important, as bearing upon the truthfulness of the defendant's testimony. Whatever importance may be given to such discrepancy, we think that evidence was not sufficient to justify the finding that the defendant committed perjury when he testified that he delivered hogs to Fairbanks on the morning of the 7th of August, 1902. If we assume, as urged by the people, that the fair interpretation of the evidence of Fairbanks is that such hogs were not delivered to him, still we think the evidence insufficient, because there is no corroboration or corroborating circumstances of such statement, which we deem to be necessary. People v. Stone, 32 Hun, 41. But as we have seen, the defendant offered considerable evidence tending to corroborate his testimony that in fact he did deliver the hogs to Fairbanks, as testified to by him.

There is still less evidence to support the charge that the defendant committed perjury when he testified upon the Boyce trial that on the 7th day of August he contracted hogs at Peterson's for his neighbor, Ross. The defendant upon this trial, as upon the Boyce trial, testified positively that he went to Peterson's meat market after dinner, and there contracted for some hogs for his neighbor, Ross. The people, to establish that such testimony given by the defendant was false, called Alfred Peterson, one of the proprietors of the meat market. He testified that he had no recollection of the defendant contracting with him for the sale of hogs on the day in question. On cross-examination he was shown a letter written by Peterson's firm in November following, addressed to the defendant, and mailed to him at his home, which clearly indicated that at some time the defendant had either made a contract with or had some negotiations with Peterson or his partner in relation to the delivery of hogs. There was no corroboration of Peterson that the defendant had not made such contract, even if it be assumed that his evidence was capable of that construction; and, on the other hand, the letter was some corroboration of the defendant's story that he had made the arrangement with Peterson testified to by him. After reading the letter, the witness Peterson stated that it was all right; that his partner had written it, and that he did not doubt a bit if Mr. Root had been there and talked with him, and said he or his neighbor, Ross, had some hogs that he wanted to sell, it might have escaped his memory; and, in substance, that the defendant might have been there and contracted the hogs, and that he instructed his partner to write the letter. The evidence was wholly in-

sufficient to justify a finding that the defendant testified falsely in the Boyce trial when he stated that shortly after dinner on the 7th day of August he contracted or made arrangements for the sale of hogs to Peterson for his neighbor, Ross.

It is urged by the learned district attorney that the falsity of the defendant's testimony upon the main issue, to wit, that he was with Boyce, in Jamestown, after 4 o'clock on the afternoon of August 7, 1902, may be considered and taken in corroboration of the testimony tending to show that he did not deliver hogs to Fairbanks, or contract for his neighbor's hogs with Peterson, as testified to by him. The difficulty with that proposition is that, for aught that appears, as we have suggested, the jury may have found that the defendant testified absolutely truthfully as to every other issue in the case, except one or the other of those now under consideration. We think the verdict of the jury, which may have been based upon the assignment of perjury submitted that the defendant testified falsely when he stated upon the Boyce trial that he delivered hogs to Fairbanks and contracted for the sale of hogs to Peterson on the 7th day of August, 1902, was contrary to and against the weight of the evidence.

Having reached the conclusion that the judgment must be reversed because the verdict of the jury is against the weight of the evidence, it is unnecessary to consider the exceptions taken to the rulings of the court made during the progress of the trial. It may, however, not be inappropriate to say that, at least upon a trial of a defendant for a crime, the trial judge ought not to give, in the presence of the jury, his recollection of any question of fact which may be in issue upon the trial. Such a statement of the recollection of the court was made in this case, but, in view of the result already indicated, we deem it unnecessary·to determine the validity of the exception taken thereto.

It follows that the judgment of conviction should be reversed, and a new trial ordered. All concur, except WILLIAMS and STOVER, JJ., who dissent.