### PEOPLE v. GILLETTE.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. PERJURY—EVIDENCE.

    In a prosecution for perjury, evidence *held* insufficient to show that the testimony given, when considered as a whole, was willfully, knowingly, and corruptly false.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Perjury, §§ 117–124.]

2. SAME—CORRECTION OF FALSE TESTIMONY.

    A witness cannot be convicted of perjury for false testimony which he immediately thereafter fully explained so that the whole constituted a truthful statement of the fact.

    Laughlin, J., dissenting in part.

Appeal from Trial Term.

Walter R. Gillette was convicted of perjury, and he appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Edward W. Hatch, for appellant.

Robert C. Taylor, for respondent.

McLAUGHLIN, J. This appeal is from a judgment convicting the defendant of the crime of perjury, and also brings up for review certain orders denying a motion to dismiss the indictment, overruling a demurrer thereto, and denying motions for a new trial and in arrest of judgment. The indictment charges, in substance, that on the 11th day of May, 1906, there was pending before the grand jury of the county of New York "a certain investigation and inquiry for the purpose, among other things, of ascertaining whether officers or employés of any description of life insurance companies in this state have lately violated in the county of New York the criminal laws of the state of

New York and of inquiring into all crimes by any such officers or employés committed or triable in the said county"; that the defendant, who for some time prior to April 1, 1906, had been a vice president of the Mutual Life Insurance Company of New York, was called and sworn as a witness, and that, "being so sworn as aforesaid, it then and there became and was material at and upon the said investigation and inquiry whether a certain bank account in a certain bank at Dobbs' Ferry, in the state of New York, called the Dobbs' Ferry Bank, which account then and there stood in the name of the said Walter R. Gillette as trustee, was the personal account of the said Walter R. Gillette, and from what source the money that had theretofore been deposited to the credit of the said bank account had come"; and that the defendant then and there feloniously, willfully, knowingly, and corruptly did falsely swear "that the said bank account was the personal account of him, the said Walter R. Gillette, and that the money that had been deposited to the credit of the said bank account had come from the personal account of him, the said Walter R. Gillette," whereas, in truth and fact, the said account was not his personal account, but his account as trustee for the Mutual Life Insurance Company of New York, and that the money deposited had come from the funds of the said company, as the defendant well knew.

The grand jury which found the indictment at the time the perjury is alleged to have been committed was making an investigation for the purpose of ascertaining, among other things, whether officers of life insurance companies of the state of New York had violated any of the criminal laws of the state, which crimes, if committed, were triable in the county of New York. A subpœna was regularly issued, requiring the defendant to attend before that body, and give evidence in a proceeding entitled "The People of the State of New York v. John Doe et al." In obedience to the subpœna, he went before the grand jury, and, the usual oath being administered, answered that he affirmed. He was not informed of the nature of the investigation or the purpose of his testimony. After he had stated that there were accounts kept in certain banks by committees and officers of the Mutual Life Insurance Company—the funds therein being used for confidential purposes—he was asked:

"Q. What is the account that is in Mr. Field's bank at Dobbs' Ferry? A. That is my personal account. Q. Where does that money that was deposited there come from? A. Came from my personal account."

Immediately thereafter, and without leaving the witness stand, he stated that he had received from time to time from certain officers of the insurance company various amounts of cash to be used for confidential purposes in the interest of the company; that he did not personally disburse the money, but paid it out as directed; that this money he at first kept in a safe belonging to himself, but later deposited it in the Dobbs' Ferry Bank in the account referred to; that the money, in fact, belonged to the insurance company, and that he for some time had endeavored to return it, and had gone so far as to take counsel on the subject; that he had never used it in his personal affairs, but only for confidential purposes of the company. The perjury charged

in the indictment and for which defendant has been convicted consists solely of the answers to the two questions above quoted.

The Constitution of this state provides that:

"No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury. * * * Nor shall he be compelled in any criminal case to be a witness against himself." Article 1, § 6.

The fifth amendment to the federal Constitution contains a similar provision. The Code of Criminal Procedure (section 10) also contains a provision to the effect that:

"No person can be compelled in a criminal action to be a witness against himself."

A proceeding before a grand jury, for the purpose of determining whether or not a crime has been committed, is a "criminal case" within the meaning of the constitutional provision. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303. The investigation which the grand jury had under consideration at the time defendant is alleged to have committed perjury, while ostensibly directed against John Doe et al., was in fact one against the defendant himself and other officers of insurance companies. He came just as much within the scope of the investigation as though he had been designated by name. It was a violation of his constitutional right to require him to attend before the grand jury and take an oath. When he took the oath, he thereupon became a witness, and the constitutional provision is that he could not "be compelled in any criminal case to be a witness against himself." An indictment obtained against him in that way would be invalid, and he could not be convicted of perjury for the testimony which he gave, inasmuch as the oath could not be legally administered to him. The charge of perjury cannot be sustained, unless it be first proved that the testimony was given in an action or proceeding where an oath is authorized by law, and that the person charged took an oath in one of the forms recognized by law. O'Reilly v. People, 86 N. Y. 154, 40 Am. Rep. 525; Case v. People, 76 N. Y. 242; Lambert v. People, 76 N. Y. 220, 32 Am. Rep. 293; Ortner v. People, 4 Hun, 323; People v. Albertson, 8 How. Pr. 363; People v. Tracy, 9 Wend. 265.

I had occasion to express my views in People ex rel. Hummel v. Davy, 105 App. Div. 598, 94 N. Y. Supp. 1037, as to the right of a witness before a grand jury which was investigating a charge, not against the witness, but whose testimony might tend in some way to incriminate him, and there said that:

"Merely being compelled to appear in pursuance of a subpœna, and be sworn, is no violation of a constitutional privilege; for the witness must take the oath so that his assertion of privilege shall be made under the sanction of an oath."

I still adhere to that view. Being called as a witness where the examination is directed against the acts of others is radically different from being called as a witness where the proceeding is directed against the witness himself. In the one case there is no power to administer

the oath, while in the other the oath may be properly administered so that if the privilege be claimed, it may be done, as already said, under the sanction of an oath. But even in the case of a witness thus subpœnaed, if his testimony results in proving a crime against himself, an indictment cannot be predicated thereon. In the leading case of Counselman v. Hitchcock, supra, it was held that, where a person was under examination before a grand jury in an investigation into certain alleged violations of the interstate commerce act (Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 79 [U. S. Comp. St. 1901, p. 3154]), he was not obliged to answer questions where he stated that the answer might tend to criminate him. Mr. Justice Blatchford, in delivering the opinion of the court, said:

"It is broadly contended on the part of the appellee that a witness is not entitled to plead the privilege of silence, except in a criminal case against himself; but such is not the language of the Constitution. Its provision is that no person shall be compelled in any criminal case to be a witness against himself. This provision must have a broad construction in favor of the right which it was intended to secure. * * * If Counselman had been guilty of the matters inquired of in the questions which he refused to answer, he himself was liable to criminal prosecution under the act. The case before the grand jury was therefore a criminal case. * * * His answers, therefore, would be testimony against himself, and he would be compelled to give them in a criminal case. It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."

This case was cited with approval and followed in People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353; the court saying:

"We are of opinion that the construction given to the very clear and plain words of the Constitution in Counselman v. Hitchcock is reasonable, fair, and accords a witness only such protection as the plain letter of the Constitution confers."

A person against whom the inquiry of the grand jury is directed should not be required to attend before that body, much less be sworn by it, and, if he is and an indictment be found, it should be set aside upon motion, and, if not, if the fact appears upon the trial, it will invalidate a conviction if one be had. People v. Singer, 18 Abb. N. C. 96; People v. Haines, 6 N. Y. Cr. R. 100, 1 N. Y. Supp. 55; State v. Froiseth, 16 Minn. 296 (Gil. 260); Boone v. People, 148 Ill. 440, 36 N. E. 99; U. S. v. Edgerton (D. C.) 80 Fed. 374. In U. S. v. Edgerton, supra, the court in setting aside the indictment said:

"It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed or knowing that his own conduct was the subject under investigation. * * * Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it, and the injury done to the public in such case outweighs that suffered by the defendant."

Here it sufficiently appears in this record—to say nothing of the appeal from the order denying a motion to set aside the indictment—

that the defendant's constitutional rights were violated when he was required to attend and testify before the grand jury.

The foregoing discussion brings us to a consideration of the question which is raised as to the form of the indictment. The defendant contends that it does not comply with the requirements of the Code of Criminal Procedure; and for that reason his demurrer thereto should have been sustained. The substance of the indictment is set out in the preceding part of this opinion, and I think error was committed in not sustaining the demurrer. Code Cr. Proc. §§ 275, 276, provide that an indictment must not only designate the crime, but contain a plain and concise statement of the acts constituting it. Formerly, under the common law, it was necessary that an indictment for perjury should set forth at length the proceedings in which the alleged perjured testimony was given. This rule, however, has been modified by statute, so that now "it is sufficient to set forth the substance of the controversy or matter in respect to which the crime was committed, and in what court, or before whom, the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it"; but it need not set forth the pleadings, record, or proceedings with which the oath was connected. Section 291, Code Cr. Proc. This indictment, it will be observed, contains the most general allegation as to the subject-matter of the investigation by the grand jury; that is, that it was making an investigation and inquiry for the purpose, among other things, "of ascertaining whether officers or employés of any description of life insurance companies in this state have lately violated * * * the criminal laws of the state of New York." What crimes? "The criminal laws of the state." All those mentioned in the Penal Code? There might be many crimes committed by officers and employés of life insurance companies concerning which any bank account kept by the defendant, whether his own moneys or not, would not have the slightest bearing, and would be wholly immaterial. Section 291 of the Code of Criminal Procedure does not dispense with the necessity of identifying the particular matter in respect to which the crime of perjury was committed, and, when it is alleged that it was committed before a grand jury, then the indictment must not only charge the perjury, but must also specifically state the subject which was being investigated. State v. Webber, 78 Vt. 463, 62 Atl. 1018; State v. McCormack, 52 Ind. 169; Commonwealth v. Pickering, 8 Grat. (Va.) 628, 56 Am. Dec. 158; Commonwealth v. Taylor, 96 Ky. 394, 29 S. W. 138; U. S. v. Wilcox, 4 Blatch. 391, Fed. Cas. No. 16,-692. The case last cited is directly in point. There the indictment alleged that the defendant committed perjury on "an examination of certain of certain persons charged with crimes or offenses against the laws of the United States." On demurrer the indictment was held bad; the court saying:

"It is not enough to allege that the persons named were charged with a crime or offense against a law of the United States, for that is a conclusion of law, but the particular charge should be stated. * * * It * * * does not appear from the indictment what charge was under investigation before the commissioner, and that, therefore, the court cannot see that the testimony alleged to have been falsely given was material. In this respect, also, the indictment is defective."

To constitute perjury, the false testimony must be given concerning a material matter under investigation. Wood v. People, 59 N. Y. 117; People v. Root, 94 App. Div. 84, 87 N. Y. Supp. 962. The purpose of an indictment is to enable the defendant to prepare for trial and to prevent a second indictment for the same offense. People v. Corbalis, 178 N. Y. 516, 71 N. E. 106; People v. Dumar, 106 N. Y. 502, 13 N. E. 325; Phelps v. People, 72 N. Y. 334; Wood v. People, 53 N. Y. 511. If it does not do this, it is not a good pleading. The indictment does not state "the substance of the controversy or matter" being investigated. A grand jury undoubtedly has large inquisitorial powers, and may require witnesses to testify as to whether a crime has in fact been committed. But, when it comes to framing an indictment for perjury committed on such an examination, then the matter under investigation must be stated, so that the defendant may be prepared to show at the trial, if he can, that, even though the testimony be false, it was not material to the investigation. The indictment, of course, must be considered in its entirety (People v. Willis, 158 N. Y. 392, 53 N. E. 29), and, when thus considered, it is contended that the matters in respect to which the alleged crime was committed are sufficiently set forth. This contention is based upon the averment that "it then and there became and was material at and upon the said investigation and inquiry" whether the bank account was the defendant's personal account, and from what source the money deposited therein had come. But this averment is simply an allegation that the testimony upon which the indictment is based was material. Material to what? To determine "whether officers or employés of any description of life insurance companies in this state" have violated the criminal laws of the state—an allegation which does not comply with the statute. But, if the contention of the learned district attorney be accepted as to the construction of the indictment, it can only mean that, when the alleged perjury was committed, the investigation was directed against the defendant to ascertain whether he were the true owner of certain moneys which he had deposited in a bank in his own name as trustee, and, for the reasons suggested in the first part of this opinion, he could not be compelled to give testimony against himself, the oath was not legally administered for that purpose, and an indictment for perjury could not be predicated upon testimony which he was thus compelled to give.

Finally, after a careful consideration of the record, I am of the opinion that at the conclusion of the trial a verdict should have been directed for defendant upon the ground that the people had failed to prove that he committed perjury in testifying as he did. When the defendant's entire testimony is considered, it seems to me one cannot but be satisfied that he fully and frankly testified as to the funds in question and the source from which it came. The account in the Dobbs' Ferry Bank was his personal account. The answer to this question certainly was true. The relation of debtor and creditor existed between him and the bank. Shipman v. Bank of the State of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Ætna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 82, 7 Am. Rep. 314. He was the only one who could draw the money out of the bank,

and the fact that it had been originally given to him to be used in the interest of the insurance company in no way changed the nature of the account. It was his personal account precisely the same. Moneys were given to him from time to time by the president of the company, at whose directions they were paid out. The amount, which varied from a few hundred to several thousand dollars, was kept in his safe until the bank account in question was opened, when he deposited $5,000. Even if it be said that the answers were misleading, in that he did not at once explain fully as to the matter, it did no harm because, immediately following such answers and before he left the witness stand, he told the whole truth with reference to the account and the source from which the fund came. No one was mislead, no one was deceived, and no one was injured. There is absolutely no evidence to justify a finding by the jury that he "willfully, knowingly, and corruptly" testified falsely.

But I do not choose to rest my conclusion on this ground alone. Even if it be assumed that the answers were false and made with intention of misleading or deceiving, an indictment for perjury could not be predicated thereon, inasmuch as immediately thereafter he fully explained the nature of the account and the source from which the fund came. A judicial investigation or trial has for its sole object the ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury. The insurance investigation developed a serious situation as to the management of life insurance companies, and it may be, and very likely is, that some of the officers of such companies are liable to and should be punished criminally for what they did, but, when this is done, it must be done according to the law of the state. Ours is a government of law, and public clamor, no matter how loud or long continued, is not evidence, nor is it a justification for judicial action. It is a matter of the highest regard to the people of the state that persons who commit crimes should be punished, but no more so than that they should be punished in a legal way. If the constitutional and statutory provisions have to be violated in order to inflict the punishment, then it had better not be done, because to do so would be nothing less than the act of the mob under the guise of law.

Several other errors are alleged which would require serious consideration, but the conclusion reached renders it unnecessary to pass upon them.

I am of the opinion that the defendant was not legally indicted, that the indictment is fatally defective, and that he was not justly convicted, and that the judgment of conviction should therefore be reversed, the indictment quashed, and the defendant discharged.

INGRAHAM, J., concurs. HOUGHTON and SCOTT, JJ., concur on last two grounds.

LAUGHLIN, J. I concur in the reversal of the judgment on the ground that the evidence is insufficient to sustain a finding that the

defendant knowingly and willfully testified falsely; but I dissent from the dismissal of the indictment and the discharge of the defendant, and am of opinion that a new trial should be ordered.