Desmond, J.
(dissenting). This decision, while appearing to reaffirm the ancient and sound recantation rule (see People v. Gillette, 126 App. Div. 665), actually so limits and hedges that rule as to leave it without any utility, if, indeed, any applicability. The limitations now announced are these: first, that the recantation must he prompt; second, that the perjurer must recant before harm has been done to the inquiry under way, and, third, that recantation must come before the perjurer learns that his perjury has been discovered.
The first of those requirements- — -promptness—-was always part of the rule itself and was certainly satisfied here since this defendant confessed his false swearing while the Grand Jury was still hearing the case and on the very next court day after the perjury. The second (and new) limitation — that there must he recantation before harm is done to the inquiry — is, if it means anything more than promptness, difficult to understand or apply in any case. Presumably, perjury always hinders the ascertainment of truth. If the majority opinion means that recantation is no defense when the perjury has produced a wrong result in the trial or investigation, then such a limitation *445 has no effect on this defendant’s case since no such disastrous result was shown here.
The third and most important condition or limitation now attached to the old rule is that perjury remains perjury unless confessed and corrected before it is discovered. But that limitation wipes out the Gillette rule (supra) and the Gillette case itself as a precedent since the Gillette record shows that Gillette recanted only when the prosecutor’s questions showed that the truth was known. Gillette, like this present defendant Ezaugi, told the truth when he had to. But, since the recantation rule’s purpose is not to reward or punish the liar but to get the truth into the record, the perjurer’s motive for recanting has nothing to do with it at all.
The high public purposes and policy behind the recantation rule should constrain us to uphold and implement it, not destroy it by limitations. When in 1908 Judge McLaughlin, later of this court, wrote the famous Gillette opinion (126 App. Div. 665, supra) holding that corrected testimony cannot be perjury, he was following a rule more than two centuries old in Anglo-Saxon law. In King v. Jones (1 Peake’s Reports 51, 53 [1791]), citing King v. Carr (1 Sid. 418 [1669]), the court said: “ The whole of the defendant’s evidence on the former trial should be proved for if in one part of his evidence he corrected any mistake he had made in another part of it, it will not be perjury ”. And, as Judge McLaughlin put it in Gillette (p. 673) : ‘ ‘ Even if it be assumed that the answers were false and made with the intent of misleading or deceiving, an indictment for perjury could not be predicated thereon, inasmuch as immediately thereafter he fully explained the nature of the account and the source from which the fund came.” The rule and the reason for it were reaffirmed in 1920 in People v. Glass (191 App. Div. 483, 486 [2d dept.]; see, also, People v. Brill, 100 Misc. 92). That reason, just as strong now as in past years and past centuries, could not be better stated than in Judge McLaughlin’s words (p. 673): “A judicial investigation or trial has for its sole object the ascertainment of the truth that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury The rule is thus one of *446 high public policy in the interest of justice. It should have our support.
The judgment of conviction should be reversed and the indictment dismissed.
Fuld, Van Voorhis and Burke, JJ., concur with Dye, J.; Conway, Ch. J., concurs in result; Desmond, J., dissents in an opinion in which Froessel, J., concurs.
Judgment affirmed.