Robert E. Dempsey, J.
Defendant moves to dismiss an indictment which charges that he committed perjury in the first degree on December 18, 1963 before the Grand Jury. It substantially pleads that he falsely denied having warned one Peter Rispóle on November 2, 1961 of impending police action by means of a prearranged code on the telephone. Defendant was a police officer and the Grand Jury was investigating, inter alia, whether defendant and Rispóle had conspired to violate the laws against gambling.
Defendant executed a “ limited waiver of immunity ” and then testified before the Grand Jury in the matter alleged to be perjurious. A trial of this indictment has resulted in a mistrial.
Now defendant moves upon the ground that his Grand Jury testimony was coerced in violation of his privilege against self incrimination. The core question is whether the “limited waiver of immunity ’ ’ is invalid under the recent pronouncement of the Supreme Court of the United States in Garrity v. New Jersey (385 U. S. 493, 500); for in that case the Supreme Court held “the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether *513 they are policemen or other members of our body politic.” The Supreme Court intends to obliterate willingness to make frank and open disclosure of one’s official activities under oath as a condition of enjoying positions of public trust. This is further evidenced by its decision in Spevack v. Klein (385 U. S. 511) and in Slochower v. Board of Educ. (350 U. S. 551). In the former case, a lawyer was disbarred for refusing to testify concerning his professional activities and in the latter a teacher was dismissed for refusing to testify before a legislative committee investigating Communism. In both eases, the penalties were invalidated.
In the Garrity ease a New Jersey police officer was warned that if he exercised his privilege against self incrimination, he would be subject to removal from office. A New Jersey statute contained provisions substantially similar to those set forth in section 6 of article I of the New York State Constitution. Simply stated, public officers who refuse to sign waivers of immunity or answer questions concerning the conduct of their office lose their jobs. The New Jersey officer agreed to co-operate. His deposition taken by the State’s Deputy Attorney General was introduced against him as a confession in a trial which resulted in his conviction for obstructing the administration of traffic laws. The Supreme Court held the introduction into evidence of that testimony to have been a violation of the Fourteenth Amendment of the Constitution and reversed the order affirming the judgments of conviction. The court noted (p. 495) in its opinion that there “ is no [New Jersey] immunity statute applicable ’ ’.
That leads to the subtle problem posed in the instant case by examination of the law of New York. One who testified in New York State under subpoena as a “target”; i.e., a prospective defendant, in a Grand Jury investigation, receives immunity. That immunity not only protects him from indictment based upon any self incriminating testimony he may give at the investigation, but also bars the use of such evidence. (People v. Steuding, 6 N Y 2d 214, 217.) The prospective defendant need not assert the privilege before testifying or even while being interrogated. (People v. De Feo, 308 N. Y. 595; People v. Yonkers Contr. Co., 17 N Y 2d 322, 335.) Under the New York law a broader interpretation is given to the immunity of the prospective defendant in the commission of perjury under these circumstances than is accorded in the Federal law. (People v. Gillette, 126 App. Div. 665, 667; cf. United States v. Winter, 348 F. 2d 204, 207, 209.) The New York law seems to be, as decided in Gillette {supra), that defendant is immune from perjury com *514 mitted before an investigating Grand Jury, which Grand Jury constitutionally could not administer a valid oath under the circumstances. That the Gillette ease decided in 1908 is still vital is to be found in the approval with which it is cited by our Court of Appeals in People v. Yonkers Contr. Co. (supra [1966]) on a different point. Subdivision 2 of section 2447 of the Penal Law of the State of New York, describing the immunity of witnesses but specifically providing that “ he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury ”, is predicated upon the fact that such perjury was committed before a ‘ ‘ competent authority ’ ’.
At the time that this defendant was called before the Grand Jury he was advised that as a public officer, under the Constitution, he was required to sign a waiver. No further colloquy ensued on this point. Thus the witness was, in effect, directed to the necessity of meeting the demands of section 6 of article I of the New York State Constitution which required him to testify concerning his conduct as a public officer for a five-year period prior to his appearance and in the alternative of a refusal to so sign — or to answer any relevant question concerning such matters before the Grand Jury — he shall be disqualified from holding public employment for a period of five years. Although the comparable New Jersey statute referred to in Garrity seemed to deprive defendant of a right to ever again hold public office as contrasted with the New York provision of five years, the ultimate effect of both statutes is deprivation of livelihood in this area of public employment, be it five years or forever. So Straehle either signed the waiver or lost his job. This placed him in the position of Garrity et al.
Thus a well-established practice leading to this indictment is now condemned by the Supreme Court of the United States. One may well argue that the holding in Garrity is that the use of a coerced confession (obtained in violation of the Fourteenth Amendment) is prohibited in a subsequent criminal proceeding where the threat of removal from office is the fulcrum of indictment and seeks to confine it to that narrow point. The narrow view is untenable because though the result may be the inadmissibility of the confession, the starting point is the area of testimonial compulsion as it is presently defined by the highest court of our land. Thus the eliciting of the limited waiver of immunity from defendant was invalid. He is therefore immune from prosecution for matters elicited in the Grand Jury. (People v. Steuding, 6 N Y 2d 214, supra; People v. Gillette, 126 App. Div. 665, supra.) It is argued here that even in Federal practice, a witness who testified under compulsion must testify truthfully *515 or be prosecuted for perjury. This is not the law of New York. (People v. Gillette, supra.) The Supreme Court’s decision does not change New York law in that respect but simply changed it by adding another judicial facet of “what constitutes testimonial compulsions ’ ’. This may penalize States with broad immunity statutes but this court must follow the mandate of the Supreme Court.
The procedure of moving to dismiss the indictment before trial to enforce immunity is authorized by People v. Freistadt (6 A D 2d 1053) and People v. Yonkers Contr. Co. (17 N Y 2d 322, supra.)
It is to be noted that unanswered in the Garrity case specifically is the status of a public officer where criminal charges are dismissed against him on these constitutional grounds, although the minority opinions in the Garrity case do comment that it is reasonable for a State to establish reasonable qualifications and standards of conduct for its public employees. Defendant’s motion is granted. The indictment is dismissed.