JOHN R. LIONBERGER, ASSIGNEE, Appellant, *v.* W. POHLMAN, Respondent.

### January 20, 1885.

1. PRACTICE — APPELLATE COURTS. — A judgment which has not substantial evidence to support it will be reversed on appeal.

2. —— The evidence in support of the plaintiff's petition being sufficient to make out his case, unimpeached, and unattended by any circumstance tending to cast suspicion on it, and there being no substantial countervailing evidence, a verdict for the defendant will be set aside on appeal.

3. —— NEW TRIAL. — Under such circumstances, it is the duty of the trial court to sustain a motion for a new trial.

APPEAL from the St. Louis Circuit Court, LUBKE, J.
*Reversed and remanded.*

JOHN D. DAVIS, for the appellant.

KLEIN & FISSE, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action to recover the sum of five hundred dollars alleged to be still due upon a promissory note of the defendant which the plaintiff released and delivered to the defendant under a mistake.   The petition sets forth that the plaintiff is the assignee of the Broadway Savings Bank, and, as such, was the holder of a promissory note for $5,000 — executed by the defendant, on the first day of September, 1875, which was secured by a deed of trust upon certain property of the defendant; that payments had been made on the same from time to time, so that, on the 30th of December, 1880, there remained a balance due of $2,338.50; that, on that day, the defendant paid to the plaintiff the sum of $1,800, — the plaintiff, at the time, calculating the amount due to be $1,838.50, and agreeing to throw off $38.50, provided the balance was then paid; "that in calculating the interest due, by mistake he failed to count the interest for one year, amounting to the sum of $500, due

upon said note, and that by reason of acting under said mistake, he surrendered said note to defendant, marking the same paid.'' The petition then avers a subsequent demand by the plaintiff upon the defendant for the payment of the $500, so remitted by mistake, and a refusal to pay the same, and asks for judgment. The answer admits the execution of the note, denies all other allegations of the petition, and then sets up a compromise agreement, by which the plaintiff agreed, in consideration that the defendant himself would sell the property upon which the note was secured by a deed of trust, and with the proceeds of the sale make prompt payment of the note, that he would make a liberal deduction from the note ; that, in pursuance of this agreement, the defendant did sell the property for the sum of $4,350 — being $650 less than the amount specified in the note without interest, and that, on the 30th of December, 1880, the defendant agreed, in consideration of what the plaintiff had done, to receive $1,800 in full payment and satisfaction of the note; and alleges that there was no mistake or misunderstanding as to the amount due upon the note, but that the deduction which was made, was made in good faith, to carry out the previous understanding between the parties.

The plaintiff testified to the effect that the amount due on the note at the time of the final settlement was not less than $2,338.50 ; that it was probably a little more, if compound interest were calculated ; that on the 30th of December, 1880, the defendant, with his brother, John H. Pohlman, and a young man whom the defendant had procured to buy the property, came to the plaintiff's office with money to take up the note ; that he there calculated the amount due to be the sum of $1,838.50 ; that this was a miscalculation, and that the mistake occurred by his omitting to calculate the interest for one year, which, at ten per cent per annum, would be $500. He testified most positively and unequivocally, that he had never made any agreement to make a discount on the note, and forego the rate of interest

which it called for. The note itself was put in evidence with the indorsements thereon. The note and these indorsements show that there was due, on the 30th of December, 1880, approximately, the sum of $2,338.50; it also shows the indorsement made upon the note on that day, at the time when the parties made the final settlement and when it was delivered to the defendant, as follows: "Rec'd Dec. 30, 1880, balance in full on this note, deducting $38.50, in settlement. J. R. Lionberger, assignee." It is plain beyond a doubt, from this statement, that the plaintiff, when he settled with the defendant and surrendered the note, intended to deduct from the amount due on the note the sum of $38.50 only, and that, in point of fact, he did deduct the sum of $538.50.

The defendant endeavored to show, in conformity with what he had alleged in his answer, that the deduction of this large sum had been made in consideration of the defendant procuring a purchaser for the property, and relieving the assignee from the cost and risk to the estate in his hands of endeavoring to make the amount due by a sale of the property under the deed of trust — the defendant having no other property out of which the amount due could be made. The testimony to support this defence was almost entirely that of John H. Pohlman, a brother and partner of the defendant, who attended to the business and conducted the negotiation with the plaintiff for the defendant. This testimony has been examined with care. It not only fails to negative what is palpable from an inspection of the note and the indorsements upon it, that the parties understood at the time of the settlement that the plaintiff was remitting only $38.50, but it fails to show any agreement, whatever, on the part of the plaintiff to remit any definite sum. It is, moreover, inconsistent with itself, in that it states that when John H. Pohlman met the plaintiff on December 30, 1880, for the purpose of making the final payment and taking up the note, he, Pohlman, stated to the plaintiff that

he found the amount due to be $1,700. He does not state how he found the amount due to be $638.50 less than the amount which was actually due, nor does he state that any promise had been made to him by the defendant from which by a calculation he could arrive at this result.

This testimony as to the agreement of the plaintiff to make an abatement of interest on the note in consideration of the defendant closing out the property, was to the indefinite effect that the plaintiff merely agreed, in consideration of this being done, to "reduce the interest * * * liberally." It does not state that there was any promise to take off any particular amount. Then, when they come to the final settlement, on the 30th of December, 1880, the witness thus describes what took place in the way of carrying out this agreement to reduce the interest liberally: "I came into Lionberger's office with these parties, as they were people that didn't understand much about property, and I told Lionberger, 'I am just in time,' that was the last day; he says, 'yes,' and he sat at his desk. I believe I had been there a day or two before and told him I had made the sale, but I would not be positive about that. He sat down at the table and commenced to figure. 'Have you figured how much you think you owe me?' says he. 'I owe you $1,700,' says I. 'Oh no,' says he, 'you owe me $1,838.50.' I think that was the language he used. I says, 'That is more than I figured it, I think you are a little over.' 'Well,' says he, 'I will knock off the $38.50, and that is all I can do.' I thought that the $500, and the $38.50 was knocked off on the interest. I had paid him the full amount of the note; that is about all that Mr. Lionberger and me spoke; it was all done inside of five minutes. I did not see how he could figure it in that time, for it took me pretty near half a night to figure it; then, says he, 'I will give you this note for $1,800,' and he signed the indorsement and wanted to turn it over to me for me to release it in court. 'No,' says I, 'it won't

take you a minute to go over to the recorder's office and release it, for these people I have got with me don't understand it;' and Mr. Lionberger and me walked over to the recorder's office and he released it, and I paid for the releasing of it. Q. What was said about the rate of interest you were to pay before the first day of January, 1881?. A. He said, if I sold the property before the first day of January, 1881, he would reduce the interest down to such a decent rate that I would be satisfied; of course, I told my brother that language, and that the interest would be about five per cent, and my brother, on that ground, allowed me to sell this property. We figured that we owed him $1,700, the day we sold the last house. If he had asked me two or three thousand, of course, I would have to pay it to give a title, for I could not give a title to the property without it. Q. Was there any mistake in reference to the calculation of the amount of interest that led Mr. Lionberger to take $1,800, or you to pay it? A. I thought I ought not to pay but $1,700, but he was positive I had to pay $1,800, and I paid it, although I paid $100 more than I ought to on the way we sold that ground, because it was a forced sale through him. He asked me to do it, and said he would give me a liberal reduction; and it was a very hard time to sell property in 1880. If I could break the contract of these sales to-day, I would be willing to give him $500 or $1,500 more, but we could not borrow the money; my brother had no property to borrow it on."

On cross-examination, the witness described the interview as follows: "He (Lionberger) sat down and figured; either a day or two before, I am satisfied that I told him that I had sold the property, and he sat down and calculated something. I don't know what. He says to me then, 'How much do you think you owe me?' Says I, 'I owe you $1,700.' Lionberger says, 'No, you owe me $1,838.50.' We spoke a little over it. I thought it was too high, and he says: 'Well, I will reduce it $38.50,

and that is all I can do, ' and he charged me for the note $1,800. The boy had given me the money already, and I had given him the deed, but it was not released, and I turned the money over, $1,800, to Mr. Lionberger, and he signed this on the note. I did not think anything about the balance that was reduced, $38.50, or I would have made him put down $538.50. "

This evidence does not, in any substantial degree tend to make out the special defence set up in the answer; but it rather tends to corroborate the testimony of the plaintiff, and to show that the plaintiff accepted $1,800, under a mistake. It shows that the plaintiff agreed to knock off $38.50, and no more. Knocking off this sum and receiving $1,800 would leave $500 still due, and that is what the plaintiff sues for. The witness entirely fails to show that there was any agreement on the part of the plaintiff that this additional sum should be knocked off; but he shows that there was no such agreement, and all the other testimony shows this. The mere fact that the witness thought "that the $500 and the $38.50 were knocked off on the interest " merely goes to show that he was not guilty of any bad faith in the matter. It does not show that the plaintiff understood that he was knocking off $538.50 of the interest. The witness entirely fails to show any agreement on the part of the plaintiff to abate this sum of $500, and the conclusion is inevitable that the accepting of no more than $1,800 was the result of a mistake on his part. If the testimony is examined and sifted through and through, it will appear: 1. That there is no evidence in the record that the plaintiff ever agreed to remit any particular sum from the amount due on the note until the day of final settlement. 2. That he never agreed to remit any greater sum than $38.50, which he agreed to remit on the day of settlement. This leaves the special defence set up in the answer wholly unsupported by substantial testimony. The rule settled by recent decisions in the supreme court and this court is, that

where there is no substantial testimony to support the verdict of a jury upon a given issue the appellate court will reverse a judgment on the verdict.  On the other hand, there is frequent difficulty in saying what the rule should be where the jury have found their verdict against affirmative testimony, against which no substantial testimony has been offered by the other side.  But, after mature deliberation, we are of opinion that the correct rule is, that, where the testimony offered in support of the allegations of the party who sustains the burden of proof is, if believed, sufficient to make out his case, and is clear, consistent with itself, delivered by an unimpeached witness, and no circumstance is developed tending to cast suspicion upon it, and no substantial countervailing evidence is offered by the other party, if the jury, nevertheless, disregard it, and return a verdict against it, it will be the duty of the trial court on a motion for new trial, and of an appellate court on appeal or error, to set it aside as being the result of a manifest mistake.

Such it seems to us was this case.  The verdict is plainly and palpably the result of a mistake on the part of the jury, and the judgment which has been entered thereon involves an obvious miscarriage of justice.  It is our duty to prevent such a result, where we can do so consistently with settled principles of law.  We accordingly reverse the judgment and remand the cause.  It so ordered.  All the judges concur.