RAIFORD BRANNEN, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion Filed October 19, 1927.

*Knight & Knight,* of Starke, and *W. H. Wilson,* of Lake City, for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant Attorney General, for the State.

STRUM, J.—This cause comes here upon writ of error to a judgment convicting the defendant below, plaintiff in error here, of the crime of perjury.

The perjury charged in the indictment is in substance that in a certain cause theretofore pending in the Circuit Court of the Third Judicial Circuit for Columbia County wherein the State of Florida was plaintiff and one Riley Douglass was defendant, in which the said Douglass was charged with unlawful carnal intercourse with an unmarried female person of previous chaste character, who was at the time of such intercourse under the age of eighteen years, in which said cause the defendant herein, Raiford Brannen, was sworn in due form of law as a witness to tell the truth, the whole truth and nothing but the truth touching the matters in issue in said cause, the said Brannen did wilfully, knowingly, falsely and corruptly during the progress of said trial testify as follows:

"Q.   Do you know W—— P—— (the female involved in the presecution against Douglass) ?

A.   Yes, sir.

Q.   How long have you known her ?

A.   I guess about two years.

Q.   State whether or not you were at her home prior to May 1st, 1925, and saw another young gentleman with his arms around said W—— P——, and that they went into the bedroom together and remained there for sometime ?

A.   This Easter Sunday was a year ago.

Q.   Answer the question yes or no.

A. Yes, sir, I was there this Easter Sunday a year ago, I drove up to her house about 2 o'clock in the afternoon, and her sister came out to the car where I was, and got into the car with me. We sat there talking I guess for five or ten minutes, and I happened to look towards the house and I saw W—— P—— and somebody leave the front room and walk into the back room, and he had his arms around her.

Q. Could you state whether or not from where you were sitting, that they closed the door of this room?

A. Yes, sir, they did.

Q. State if you know how long they stayed in there?

A. I left before they came out.

Q. How long did you stay there?

A. I guess thirty or forty minutes.

Q. Do you know who this young man was?

A. I think it was Richard Thomas, but I would not be positive it was him."

The date of the alleged offense of Douglass was charged in the indictment against him as May 9, 1925. The previous chastity of the female involved in that prosecution was of course a material issue. It is the contention of the State that the foregoing testimony of this defendant as a witness in the former prosecution against Douglass was material to the issues in that cause and tended to affect the result thereof in that it was pertinent and material to the question of the previous chastity of the prosecutrix in the former cause. See Fields v. State, decided at the June Term, 1927.

At the trial of this cause the State introduced in evidence a portion of the transcript of the evidence adduced in the prosecution against Douglass from which it appears that this defendant, when duly sworn as a witness in that cause, testified as alleged in the indictment herein. The

State further introduced credible and unassailed evidence from which it could be lawfully found or inferred that the defendant could not have observed, on Easter Sunday, 1925, the events recounted by him in the foregoing testimony, because the young woman in question was away from her home on that day from about nine o'clock A. M. until about six o'clock P. M., or later. The State thereupon rested.

Testifying in his own behalf in this cause, the defendant Brannen stated that he recalled the testimony given by him as a witness in the prosecution against Douglass and admitted that he originally testified substantially as set out in the indictment herein. Referring to his testimony in the Douglass case, the defendant further testified without objection from the State as follows:

"A. * * * But later, after I had been on the stand and studied it over, I was not positive that it was Easter Sunday, or the Sunday before or the Sunday after, and I asked permission to come back on the stand, and correct that portion of my testimony about the time it was, or the day it was, and the court permitted me to do so.

Q. The court permitted you to come back on the stand and correct it?

A. Yes, sir.

Q. When did you correct it?

A. The next day.

Q. When you returned to the stand, what did you say as to that portion of your testimony that you wished to correct, if you recall?

A. The portion that I wanted to correct was, that I was not positive that I was there (at the home of the young woman) on Easter Sunday, the Sunday before or the Sunday after. I could not be positive which one of these three days that it was, but it was during Easter, 1925.

Q. But you were there on one of these Sundays?

A. Yes, sir.

Q. And you saw what you testified to, as having seen there?

A. Yes, sir.

Q. And you made that correction at the trial of the case of the State v. Riley Douglass?

A. Yes, sir.

Q. Was that before the defendant had closed his testimony in the case?

A. Yes, sir.

Q. Was it before the State had offered any evidence in contradiction thereof, or that you knew that the State had any such evidence?

A. Yes, sir.''

The offense charged against Douglass was alleged to have been committed on May 9, 1925. In the year 1925, Easter Sunday fell on April 12th. The dates referred to by this defendant in his corrective testimony as a witness in the Douglass case—the Sunday before or the Sunday after Easter 1925—were therefore material to the issues in the Douglass case.

It was neither charged nor proven by the State that the last quoted testimony of the defendant was also false. In fact, the latter testimony was nowhere alluded to in the State's case, either in the indictment or proof. It was introduced in this cause by the defendant, in explanation and extenuation of his original testimony. The fact that this defendant, when testifying as a witness in the prosecution against Douglass, resumed the stand and gave the additional testimony last quoted is evidenced in this case only by the oral testimony of the defendant himself, but his testimony to that effect is unassailed in this record, and is not controverted, disputed or otherwise discredited.

That this defendant did resume the stand in the former case and further testify upon the matters embraced in his original testimony is consistent with and finds corroboration in the testimony of the State's witness, the official court reporter who took the evidence in the prosecution against Douglass. The reporter testified upon cross examination that the testimony attributed by the State to the defendant, upon which the indictment herein is based, did not include all the testimony given by this defendant as a witness at the trial of the cause against Douglass, but that "there appears in the record (in the former case) more questions and answers given by the witness (this defendant) touching matters in the case of the State of Florida v. Riley Douglass," and "touching matters given by this defendant at that trial." The court reporter was not specifically interrogated as to the substance or contents of the additional testimony in the former case, but this defendant's present testimony as to what it was is not controverted, disputed or otherwise discredited by the State. The circumstances of this case do not justify the application of the maxim "*falsus in uno, falsus in omnibus*" as a means of discrediting in this case the defendant's undisputed testimony that he in fact corrected or modified his original testimony in the Douglass case. See Kay v. Noll, 30 N. W. Rep. 269; Hall v. State (Ala.), 30 South. Rep. 422; Ball v. State (Miss.), 43 South. Rep. 84; Godan v. Ham. Natl. Bank, 80 N. E. Rep. 407; 8 Ann. Cas. 447, 25 C. J. 662.

Uncontroverted and undiscredited evidence is not necessarily always binding upon a court or jury, as for instance, when it is essentially illegal, contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence, or contradictory within itself. Ordi-

narily, however, and subject to certain well defined exceptions (See 23 C. J. 47), such evidence, when material, properly admitted, and when it consists of facts (not opinions), can not be wholly disregarded or arbitrarily rejected even though the witness giving it is an interested party. Montgomery v. State, 55 Fla. 97, 45 South. Rep. 879; In re: Miller, 90 Pac. Rep. 1002; 14 Ann. Cas. 277; American Lead Pencil Co. v. Gottlieb, 181 Fed. 178; Mobile Light & R. Co. v. Roberts (Ala.), 68 South. Rep. 815; Louisville etc. R. Co. v. Moran (Ala.), 76 South. Rep. 7; Sundgren v. Stevens, 119 Pac. Rep. 322, 39 L. R. A. (N. S.) 487; Lewis v. New York City R. Co., 99 N. Y. Supp. 462; Lionberger v. Pohlman, 16 Mo. App. 392; Engman v. Immell, 18 N. W. Rep. 183.

While conflicts in the evidence, the credibility of witnesses and the weight of the evidence are for the determination of the jury (Berger v. E. Berger Co., 76 Fla. 503, 80 South. Rep. 296), still the *legal effect* of material and competent evidence not met by opposing evidence, and not impeached, discredited or controverted, is a question of law. Bossom v. Gilman, 70 Fla. 310, 70 South. Rep. 364. The principle just stated is not in conflict with Glover v. State, 22 Fla. 493. The proposition there under consideration differs materially from the one here considered.

In view of the uncontroverted and undiscredited testimony of the defendant found in this record that as a witness in the Douglass case, and before the final submission thereof, he resumed the stand and corrected or modified his original testimony, upon which this prosecution is based, by giving further testimony material to the issue and touching the subject matter of his original testimony, which corrective or modifying testimony is not charged by the State to have been false, and in view of the fact that this defendant's present testimony to that effect is

consistent with and in part corroborated by the State's evidence, the judgment of conviction can not be sustained. "A judicial investigation or trial has for its sole object the ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury." People v. Gillett, 111 N. Y. Supp. 133, 126 App. Div. 665. "The law encourages the correction of erroneous and even intentionally false statements on the part of a witness, and perjuy will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimany." People v. Brill, 165, N. Y. Supp. 65. See also Comm. v. Shooshanian, 96 N. E. Rep. 70; 24 Ann. Cas. 1073; Bishop on Criminal Law (9th Ed.) Sec. 1044a.

Reversed.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.