384 So.2d 1255 (1980)
T.R. CARTER, Petitioner,
v.
STATE of Florida, Respondent.
No. 56084.
Supreme Court of Florida.
May 1, 1980.
Rehearing Denied July 21, 1980.
Richard A. Kupfer, David Roth and Robert Q. Wyokoff, Jr. of Cone, Owen, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for petitioner.
Jim Smith, Atty. Gen., and Marc E. Kirk and Max Rudmann, Asst. Attys. Gen., West Palm Beach, and David H. Bludworth, State's Atty., and Barry Krischer, Asst. State's Atty., West Palm Beach, for respondent.
*1256 McDONALD, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, Fourth District, in State v. Carter, 364 So.2d 1249 (Fla. 4th DCA 1978), which is in apparent conflict with Brannen v. State, 94 Fla. 656, 114 So. 429 (1927). This Court has jurisdiction.[1]
The facts are fully stated in the trial judge's order in which he concluded as a matter of law that Dr. Carter was not guilty of perjury. That order reads as follows:
Defendant, T.R. Carter, is a licensed and practicing chiropractor charged with perjury in an official proceeding under section 837.02(1), Florida Statutes. His co-defendant therein is Carrie Jones Brunson, his patient. Brunson had filed a civil suit against Archie William Squibb, et al. in case number 76-441 CA(L) 01-E alleging certain injuries resulting from an automobile accident on June 20, 1975 and subsequent treatment by defendant, Carter.
On January 5, 1977, pursuant to subpoena duces tecum, Carter appeared before Roy R. Watson, Esquire, attorney for the civil defendants, and gave his sworn deposition concerning his examination and treatment of Brunson's alleged injuries, producing his medical records as they related to the June 20, 1975 accident and subsequent treatment. Carter testified under oath unequivocally that he had neither seen nor treated Brunson prior to the June 20, 1975 accident. See pages 3, 6 and 16-17 of defendant's deposition. Attorney Watson had reason to believe otherwise, that is that Carter had seen and treated Brunson over an extended period of time prior to June 20, 1975 for a pre-existing condition and so advised Carter on pages 22-24 of said deposition. Watson requested Carter to search for additional records to verify same, if possible, and to call him (Watson) the following day to advise him of the results of the search and to furnish him with any additional records, but excused Carter from any further personal appearance for deposition purposes. See pages 28-29 of said deposition.
On the day following the deposition, January 6, 1977, Carter wrote Attorney Watson a letter enclosing a copy of his statement for professional services rendered, dated January 18, 1975, to Brunson in the amount of $881.00 for numerous visitations and treatment of Brunson beginning on June 6, 1974 and ending on January 17, 1975, showing approximately 79 visitations. Apparently, Attorney Watson was satisfied and did not depose Carter further in this regard. However, Judge James R. Stewart, Jr. before whom the civil trial was subsequently heard referred the matter to the State Attorney for investigation and possible perjury charges. The State Attorney investigated pursuant thereto and filed the information herein charging Brunson with perjury in count one and Carter with perjury in count two. Brunson was apparently deposed on December 16, 1976, prior to Carter.
The matter is now before the Court on Carter's Motion to Dismiss filed pursuant to Rule 3.190(c)(4) alleging there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt as to Carter, citing Brannen v. State, 94 Fla. 656, 114 So. 429 (1927). The State filed a "traverse", but admitted the truth of the facts contained in the Motion to Dismiss, contending the undisputed facts nevertheless did constitute a prima facie case of guilt, citing Sherman v. State, 135 Fla. 243, 184 So. 843 (1938). The matter came on for hearing upon the pleadings, defendant Carter and his counsel being present. The defense introduced a copy of Carter's aforementioned deposition, letter of January 6, 1977 and statement of services rendered dated January 18, 1975 for identification purposes only. However, the Court has considered same as though they are in evidence. The Court has considered the pleadings, the exhibits and argument of respective *1257 counsel. The defense contends that defendant recanted his false or erroneous testimony and therefore a perjury prosecution cannot be sustained under Brannen, supra. The State counters that Sherman, supra, and section 837.021(1), Florida Statutes, have effectively abolished the defense of recantation recognized in the Brannen case. No case has been cited as to holding, nor has the Court's research found such a case.
The Court has carefully read and considered both Brannen and Sherman and feels bound to follow Brannen. The Sherman case is readily distinguishable in that the defendant in that case did not actually recant his false testimony in the same proceeding wherein it was given, but merely admitted the falsity thereof in a separate proceeding months later. In the present case, Carter fully corrected the falsity of his testimony essentially in the same proceeding, having been excused by Attorney Watson from reappearing at deposition, and did so the day following his false testimony. It matters not whether Carter knew his original testimony was false or whether he was merely mistaken. "The law encourages the correction of erroneous and even intentionally false statements on the part of a witness, and perjury will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimony." Brannen, 114 So. p. 431.
As to the State's contention that section 837.021(1), has effectively abolished the defense of recantation, the Court feels otherwise where full recantation is forthcoming in the same proceeding before final submission. "A judicial investigation or trial has for its sole object the ascertainment of the truth, that justice be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted of perjury." Brannen, 114 So. p. 431. This Court cannot find, and does not believe, the Legislature by enacting section 837.021(1) ever intended to preclude a search for the truth in the judicial process. In reaching this conclusion, the Court has not overlooked Brown v. State [334 So.2d 597] wherein a closely divided Supreme Court upheld the constitutionality of section 837.021(1). What the majority of that Court implied regarding unavailability of recantation of wilful perjured testimony as a defense is dictum. It is therefore ORDERED AND ADJUDGED that count two only of the information herein be and the same is hereby dismissed as to the defendant, T.R. Carter.
The district court of appeal reversed that order. It felt it significant that Dr. Carter may have made the correction because he knew that the falsity of a prior statement might be discovered. In stating that recantation is not a viable defense when it is made after it has become manifest that such falsity has been or will be exposed, the district court engraved an exception upon the rule of law declared in Brannen that was not intended and that should not be perpetuated. There are some jurisdictions that rule differently on this issue[2] but the policy reasons to faithfully adhere to Brannen[3] are sound.
Dr. Carter corrected the facts he had related in his deposition promptly and voluntarily. *1258 He gained nothing from the false statement made.[4] No one was prejudiced by his false statement and the proceedings were not affected thereby. His subsequent testimony was consistent with the recanted version. Under these circumstances the fear of being caught should not vitiate the defense of recantation.
We adopt the order of the trial judge and the dissenting opinion of Judge Cross[5] as being correct in this cause. In doing so, we specifically hold that section 837.021(1), Florida Statutes, has not abolished the defense of recantation. Accordingly, the opinion of the Fourth District Court of Appeal is quashed, with directions to reinstate the order of the trial judge dismissing this action.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and SUNDBERG, JJ., concur.
ALDERMAN, J., dissents with an opinion.
ALDERMAN, Justice, dissenting.
I would approve the decision of the district court. In my opinion, the trial court's order granting Dr. Carter's motion to dismiss the information was in error. As stated by the district court:
Our system of justice cannot endure perjurious testimony and individuals should be encouraged to voluntarily make corrective statements. Nevertheless, perjury is complete upon the willful false swearing to any material matter. Recantation is a defense to an allegation of perjury only where there is an acknowledgment of the falsity of the original sworn statement, a voluntary retraction of that statement, and a new statement which discloses the true facts. It is not a viable defense where the perjured testimony has substantially affected the proceeding or it has become manifest that such falsity has been or will be exposed. Otherwise, one could rest on his lie, allowing it to substantially affect a proceeding, and never retract unless the falsity had been exposed. This would provide no inducement or encouragement to tell the truth.
364 So.2d at 1250.
It may be that the false deposition testimony by Dr. Carter was inadvertent and without criminal intent. Likewise, his subsequent recantation of the false statement may have been a good faith attempt on his part to retract a knowingly false statement and to make a new statement disclosing the true facts before the perjured testimony had substantially affected the proceeding or before it had become manifest that such falsity had been or would be exposed. These, however, are factual issues and should be resolved by a jury rather than by the trial court on a motion to dismiss.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] 60 Am.Jur.2d Perjury § 47.
[3] judicial investigation or trial has for its sole object the ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury." People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133. "The law encourages the correction of erroneous and even intentionally false statements on the part of a witness, and perjury will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimony." People v. Brill, 100 Misc.Rep. 92, 165 N.Y.S. 65.
94 Fla. at 663, 114 So. at 431.
[4] As contrasted to Sherman v. State, 135 Fla. 243, 184 So. 843 (1938).
[5] 364 So.2d at 1250.