433 So.2d 653 (1983)
STATE of Florida, Appellant,
v.
Leroy Webster SNIPES, Jr., Appellee.
No. AO-239.
District Court of Appeal of Florida, First District.
June 27, 1983.
*654 David P. Gauldin, Asst. Atty. Gen., Tallahassee, and Harris A. Tobin, Asst. State Atty., Eighth Judicial Circuit, Lake Butler, for appellant.
Daniel T. O'Connell, of O'Connell & Hulslander, Gainesville, for appellee.
ZEHMER, Judge.
The issue in this case is whether a perjury charge may be dismissed on the grounds of recantation when the alleged perjurer recants his false statement after two innocent persons are arrested and charged with arson.
On May 3, 1982, an assistant state attorney took sworn testimony from the defendant to determine whether there was probable cause to file an information and arrest certain individuals suspected of arson of a school building. Defendant stated under oath that Steve Tabor and Virgil Douglas had said they had burned down the school building. The same day, based upon this testimony, the state attorney's office filed an information against both Tabor and Douglas and had them arrested. Upon being interviewed by the local sheriff's office, Tabor and Douglas denied involvement in the offense and claimed that they had alibis. The next day, a deputy sheriff confronted the defendant with the fact that Tabor and Douglas had denied burning the school and had provided alibis. In response thereto, the defendant voluntarily admitted that he had lied when he implicated Tabor and Douglas. Tabor and Douglas were thereupon released from custody.
The state attorney's office filed a perjury charge against defendant.[1] Pursuant to Rule 3.190(c)(4), Florida Rules of Criminal Procedure, defendant moved to dismiss the charge based upon the defense of recantation. The state did not dispute the above-stated facts, and the trial court granted the motion. This appeal followed.
According to the Florida Supreme Court's decision in Carter v. State, 384 So.2d 1255 (Fla. 1980), recantation is a defense to a charge of perjury if the following elements exist:
1. The recantation occurred promptly and voluntarily.
2. The defendant gained nothing from the false statement.
3. No one was prejudiced by the false statement.
4. Judicial proceedings were not affected by the false statement.
5. Any subsequent testimony from defendant is consistent with the recanted testimony.
The public policy behind the Carter rule is to encourage the ascertainment of truth from witnesses by allowing them to correct their false statements without fear of perjury charges. Id., at 1257. In Carter, the false statement occurred during a deposition taken in an ongoing judicial proceeding. The false statement was recanted by the defendant the day following the deposition and had no prejudicial impact upon the pending judicial proceedings.
In the present case, we are concerned principally with the element of prejudice. There was no judicial proceeding pending at the time of the defendant's alleged false statement; rather, the statement was made *655 incident to an investigation. The statement was apparently the basis for two persons being arrested on charges of arson, but those persons were promptly released from custody the following day when defendant voluntarily recanted. While their arrest may well be considered prejudicial in one sense, in another sense such prejudice becomes minimal when compared to what they might have incurred  persisting charges, a trial, possible conviction and imprisonment  had the defendant not so quickly and readily recanted.
The defense of recantation is based upon the presumption that a judicial investigation and trial has as its object the ascertainment of truth in the interest of justice. To effectuate this policy, a witness should be given a reasonable opportunity to recant without fear of a subsequent perjury prosecution. A trial judge must be clothed with limited discretion to balance the competing interests involved rather than being required to mechanically apply the above-stated criteria. The public policy underlying this defense should be allowed to take priority over the minimal prejudice suffered by Tabor and Douglas in the circumstances of this case. The circuit court did not err by recognizing and effectuating this desirable policy.
The state also argues that appellant's defense of recantation involved factual questions which should have been submitted to the jury rather than decided on a Rule 3.190(c)(4) motion. However, the state did not controvert the material facts relied on by appellant, so there was no issue for the jury to try. The court, not the jury, should decide whether the undisputed facts establish a valid defense of recantation. In Carter, the Supreme Court affirmed a motion to dismiss based on the defense of recantation. We believe it was correct to do likewise in this case.
AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and WENTWORTH, J., concur.
NOTES
[1] The information charged that on May 3, 1983, defendant:

"did then and there make a false statement, which he did not believe to be true, under oath in an official proceeding in regard to an material matter in that, to-wit: after being duly sworn by Harris A. Tobin, an Assistant State Attorney and notary public in the State of Florida, Leroy Webster Snipes was asked, in an investigation concerning the arson of the Lake Butler Middle School for the purpose of taking sworn testimony so that an information could be filed, `Do you remember whether or not Mr. Douglas ever said anything one way or the other, other than laughing', the said Leroy Webster Snipes answered, `He said he did burn it down, that he helped Buck do it', and when further asked, `So really it was Buck primarily and then Virgil just helped with it', the said Leroy Webster Snipes answered, `Yes Sir. Buck's crazy', whereas in truth and fact Leroy Webster Snipes knew that Steve Tabor and Virgil Douglas did in fact not burn down the Lake Butler Middle School, contrary to Section 837.02, Florida Statutes."