COBB, Judge.
The issue in this case is whether the trial court properly granted appellee’s, William Godby’s, motion to dismiss a perjury *693 charge based on the defense of recantation. Godby was charged with perjury arising out of misstatements he made during a bond reduction hearing held on August 3, 1984. At the hearing, Godby, who was under a total bond of $130,000 on two charges, testified regarding his assets. In particular, Godby denied having an interest in a motor home, as follows:
Q Okay. You’ve mentioned two Cad-illacs. You’ve mentioned two motorcycles. Do you own a motor home — vehicle — motor home? Do you have any interest in any way whatsoever personally or through any business entity of ...
A (Interposing) No.
Q ... any form? Do you have a — a motor vehicle — excuse me. Do you have a motor home available to you for your use?
A I have used one just recently on a vacation. Yes, sir.
Q All right. And who owns that motor — motor home?
A I believe it’s Vigel’s (Phonetic) Auto Sales.
Q Pardon me?
A Vigel’s (Phonetic) Auto Sales.
Q And was this just given to you to use?
A It’s just a loaner vehicle, yes.
Q Did you pay for that — for the use of that motor home in any way whatsoever?
A No, sir.
Subsequently, on August 30, 1984, God-by appeared at a hearing requested by his defense counsel to “correct misstatements” made by Godby at the August 3 hearing. According to the defense counsel, who was not Godby’s attorney at the initial hearing, the attorney became aware of the misstatements during his first interview with God-by on August 28, 1984. At the hearing, Godby admitted making an erroneous statement concerning the ownership of the motor home. He testified that he was a 50% partner in a corporation holding title to the motor home, but that he was not aware of it at the initial hearing. Following the hearing, the court maintained the bond amount as set at the earlier hearing.
After the state filed a perjury information, the defendant filed a motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), based upon the doctrine of recantation. A supplement of faets was added to the motion to dismiss by both parties, and included the fact that the motor home was found at the defendant’s home on August 20, 1984, along with the bill of sale, which Godby signed. The supplement also included statements from the deposition of one Paul Veigel, including the fact that Godby went to Veigel between August 7 and 13, 1984, and told him to say that he (Veigel) owned the motor home in the event he were asked. Veigel was served with a subpoena duces tecum regarding the motor home on August 23, with the deposition set for August 31. According to the deposition, Godby called Veigel sometime after August 23, but Veig-el would not talk to him. On August 27 or 28, Godby went to Veigel’s business again and told him he was confused as to the motor home. The state filed a demurrer to the motion and, after hearing, the lower court granted the motion to dismiss.
The question is whether Godby’s recantation at the August 30 hearing was sufficient to require dismissal of the perjury charge. Florida law on this question consists of a total of five cases. The earliest is Brannen v. State, 94 Fla. 656, 114 So. 429 (1927), wherein the defendant was charged with peijury for falsely testifying at a trial. The evidence in the case showed that the defendant, while initially committing perjury, corrected himself the next day during the trial prior to either the closing of the defense case or the state’s presentation. The court found that under the circumstances, a perjury cause could not be sustained, noting:
... “A judicial investigation or trial has for its sole object the ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This in *694 ducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury.” People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133. “The law encourages the correction of erroneous and even intentionally false statements on the part of a witness, and perjury will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimony.”
114 So. at 431.
In Sherman v. State, 135 Fla. 243, 184 So. 843 (1938), the defendant testified falsely in August, 1937. This testimony was recanted when the defendant was summoned before the court in December, 1937 (the opinion is unclear as to why he was resummoned or what the nature of the proceeding was). The supreme court, affirming the judgment of perjury, found:
Now this was not a case where a witness inadvertently or otherwise testified falsely and then voluntarily corrected and repudiated his false testimony, but here he testified falsely to gain an advantage to himself and months afterward, when the truth had become known, and when the false testimony could serve him no longer, he admitted the falsity of his former testimony.
184 So. at 846-47.
The Florida Supreme Court next addressed this issue in Carter v. State, 384 So.2d 1255 (Fla.1980). In Carter the court quashed the decision of the Fourth District and reinstated the trial court’s dismissal of a perjury information. The facts in the case, as recited in the trial court’s order, adopted by the supreme court, show that Carter was a licensed chiropractor who was subpoenaed by the defendant in a personal injury action to give a deposition concerning treatment of his patient, the plaintiff. Carter testified at his deposition concerning the injury, and stated unequivocally that he had neither seen nor treated the plaintiff prior to the date of the accident which gave rise to the suit. The defense attorney questioned Carter on this statement, and requested him to search for additional records and advise the attorney if there were any changes. The attorney did excuse him from any further personal deposition appearances. The next day, Carter wrote to the attorney and included a statement for treatment of the plaintiff on 79 occasions prior to the accident. No further depositions were sought by defense counsel. The trial judge, however, referred the matter to the state attorney’s office, resulting in the perjury charge. Carter filed a 3.190(c)(4) motion to dismiss, claiming recantation and arguing dismissal based on Brannen. The state admitted the facts, but claimed a prima facie case of guilt, citing Sherman. The trial court determined to follow Brannen, distinguishing Sherman on the basis that the defendant there recanted in a separate proceeding months later. The trial court found that Carter recanted his false testimony in essentially the same proceeding. The Fourth District reversed, finding it significant that Carter may have made the correction because he knew that the false statement may be discovered. The supreme court disagreed with this basis for decision, noting:
In stating that recantation is not a viable defense when it is made after it has become manifest that such falsity has been or will be exposed, the district court engraved an exception upon the rule of law declared in Brannen that was not intended and that should not be perpetuated. There are some jurisdictions that rule differently on this issue but the policy reasons to faithfully adhere to Bran-nen are sound. (Footnote omitted.)
Dr. Carter corrected the facts he had related in his deposition promptly and voluntarily. He gained nothing from the false statement made.[4] No one was prejudiced by his false statement and the proceedings were not affected thereby. His subsequent testimony was consistent with the recanted version. > Under these circumstances the fear of being caught should not vitiate the defense of recantation.
*695 384 So.2d at 1257-58.
The supreme court relied on Carter in 1981, when it quashed, without opinion, a First District opinion in Jones v. State, 400 So.2d 12 (Fla.1981). In the DCA Jones, 383 So.2d 1092 (Fla. 1st DCA 1980), on rehearing, the court held that recantation must be voluntary — “done without knowledge that the perjury has been uncovered and the truth known_” 383 So.2d at 1093. In Jones, the defendant recanted (presumably during the trial) after being confronted by the defense attorney during a recess. The First District found the recantation “motivated more by the fear of a perjury charge than by any concern with having' the truth known” and, thus, affirmed the trial court’s ruling denying Jones’s recantation. Id.
The latest case on the subject is State v. Snipes, 433 So.2d 653 (Fla. 1st DCA 1983). In Snipes, the defendant gave testimony to an assistant state attorney during an investigation of probable cause in an arson case. The defendant claimed two individuals had stated to him that they had burned the building. An information was filed later that day based on this testimony, and the two men were arrested. The next day, a deputy confronted the defendant with the fact that the two men denied burning the building and had provided alibis: The defendant then voluntarily admitted he had lied, and the men were released. A perjury charge was filed against the defendant, and the defendant moved to dismiss based on recantation. The court granted the motion, and the First District affirmed. The court viewed the public policy behind Carter to be the ascertainment of truth from witnesses by allowing them to correct their false statements without fear of perjury charges. The court considered the prejudice resulting from the arrest, but saw it as minimal compared to that which would have occurred had there been no recantation.
The distinction between Sherman, wherein prosecution was permitted, and the other cases where it was not seems to focus on whether the witness voluntarily recanted in the same judicial proceeding, whatever may have motivated recantation. The court found that recantation did occur in the same proceeding in Brannen, Carter, Jones and Snipes. In those cases it could be said that no prejudice resulted from the false statement and the proceedings were not affected by it.
In the instant case, due to the perception and alacrity of Godby’s second counsel, it can be said that recantation occurred in the same judicial proceeding. Although the bond reduction hearing had terminated without contemplation of any further information or action in regard thereto, the terms of an appearance bond are ongoing and subject to modification throughout a criminal prosecution. It appears that no prejudice resulted to the state as a result of Godby’s false statement and the proceedings were not affected by it. Accordingly, the order entered below is
AFFIRMED.
UPCHURCH, C.J., and SHARP, J., concur.

 As contrasted to Sherman v. State, 135 Fla. 243, 184 So. 843 (1938).