926 So.2d 463 (2006)
A.A.R., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-515.
District Court of Appeal of Florida, Fourth District.
April 19, 2006.
Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
*464 TAYLOR, J.
A.A.R. appeals his delinquency adjudication, which was based, in part, on his giving a false name to a police officer. We reverse, because the child recanted and provided his true name to the officers before he was arrested, transported, or booked, and before any serious harm was done. In reversing, we conclude that the common law recantation defense applies to violations of the new "false name" statute, section 901.36(1), Florida Statutes (2004).
On September 29, 2004, Sergeant Sean Murray observed A.A.R., who was fourteen years old, standing in the breezeway of an apartment complex smoking a cigar.[1] The officer confronted the child and another boy and asked them to sit on the curb. *465 The officer asked the child his name, address, and date of birth. A.A.R. gave the officer a false name (James Robinson) and a false date of birth. The officer thought that the child was lying, because he did not reflexively respond to the name "James." To confirm his suspicion, the officer ran the false name through the computer system.
Officer Murray testified that he repeatedly warned the child and told him that if he would just give his real name he would be released if there were no warrants for his arrest. The child persisted in claiming that he was "James."
When Officer Murray's supervisor, Corporal Clinton Cohen, arrived on the scene, the two officers separated the boys. Although the timing sequence is not clear, the other boy told Officer Murray A.A.R.'s true name. A.A.R. also told Corporal Cohen his correct name and date of birth the first time he was asked. Officer Murray testified that it took him ten to fifteen minutes to obtain the defendant's true name. The officers did not use the false name in writing any report or citation. When they charged A.A.R. with giving a false name, they booked him under his correct name.
The trial court denied the child's motion for judgment of dismissal and adjudicated him delinquent. As the result of this charge and a separate incident, the defendant was committed to a level eight residential program.
The standard of review applicable to a motion for judgment of dismissal in a juvenile case is the same as the standard for a motion for judgment of acquittal in a criminal case, de novo review. See G.G. v. State, 903 So.2d 1031, 1032-33 (Fla. 4th DCA 2005).
As the fifth district explained:
In moving for a judgment of dismissal, the movant "`admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" Beasley v. State, 774 So.2d 649, 657 (Fla.2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)). "[A]ll reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the state." Espiet [v. State], 797 So.2d [598] at 601 [(Fla. 5th DCA 2001)] (citing Beasley; Hoffman v. State, 708 So.2d 962 (Fla. 5th DCA 1998)).
A.P.R. v. State, 894 So.2d 282, 285 (Fla. 5th DCA 2005).
The child was convicted of giving a false name to a police officer, a misdemeanor offense, under section 901.36(1), Florida Statutes. This section states, in pertinent part:
It is unlawful for a person who has been arrested or lawfully detained by a law enforcement officer to give a false name, or otherwise falsely identify himself or herself in any way, to the law enforcement officer. . . .
Before the 1999 adoption of the "false name" statute, giving a false name to a police officer was prosecuted as an obstruction of justice, or resisting an officer without violence, under section 843.02, Florida Statutes. Many cases interpreting the obstruction statute recognized a recantation defense where the defendant acted with sufficient promptness in correcting the false name. The issue we must decide in this case is whether recantation is a defense under the new "false name" statute and, if so, whether the facts in this case would support such a defense.
The new "false name" statute contains no express recantation defense. However, the recantation defense is based on common law public policy. As explained *466 above, it has been applied to the obstruction statute, and previously, to the perjury statute. We believe that the public policy underlying the recantation defense for obstruction and perjury charges applies equally to the current "false name" statute. As explained in P.P. v. State, 466 So.2d 1140, 1141 (Fla. 3d DCA 1985):
Just as in perjury prosecutions where a defendant may recant his intentionally false testimony prior to the final submission of the case, Jones v. State, 400 So.2d 12 (Fla.1981); Carter v. State, 384 So.2d 1255 (Fla.1980); Brannen v. State, 94 Fla. 656, 114 So. 429 (1927); State v. Snipes, 433 So.2d 653 (Fla. 1st DCA 1983), so, too, one accused of obstructing justice, as here, should be able to retract any "false information" before it is officially recorded or does any harm. The underlying policy in both such cases is first, to encourage witnesses to tell the truth to the authorities and, second, the correlative need to induce such witnesses to correct, without fear of prosecution, their prior falsehoods before they have done any harm.
Absent some clear legislative expression that it did not intend the recantation defense to apply to the new statute, the defense should be available upon the same reasoning followed in obstruction cases.
In obstruction cases, the primary issue in deciding whether to permit recantation of a false name as a defense has been the extent of the delay in retracting and correcting the false information. The extent of the delay correlates to the amount of harm done, if any. In Burdess v. State, 724 So.2d 604 (Fla. 5th DCA 1998), no more than three minutes elapsed between the time the defendant gave the arresting officer a false name and the time she furnished her correct name. The fifth district reversed her conviction, stating:
There was no testimony that the officer was impeded in any way by the giving of the original false information. No reports were prepared based on it, nor was any action taken in reliance on it. The information was corrected before it did any harm, and appellant was not being legally detained.
Id. at 604. Although A.A.R. was being legally detained for suspected underage smoking, the officers did not prepare any reports based on the false name or take any action in reliance on it.
In Steele v. State, 537 So.2d 711, 712 (Fla. 5th DCA 1989), the fifth district reversed an obstruction conviction for lack of harm, where the defendant had recanted at the police station after being confronted with his true name. The court stated:
No evidence was adduced by the state as to the method by which the police learned Steele's name or the effort or time expended in obtaining that information. In this case, as in P.P. v. State, 466 So.2d 1140 (Fla. 3d DCA 1985), the false information was corrected by the defendant, albeit with prompting, before it was officially recorded or did any harm.
In C.T. v. State, 481 So.2d 9 (Fla. 1st DCA 1985), the first district reversed an obstruction conviction. There, the officer had recorded the false name in partially filling out a citation he intended to issue to the defendant. He then ran the false name through the police computer to check for outstanding warrants. At that point, the defendant confessed his true name. The first district stated:
Here, as in P.P. v. State, 466 So.2d 1140 (Fla. 3d DCA 1985), the juvenile voluntarily corrected the false information he gave the officer before any real harm was done. Although the false information given by the juvenile defendant in this case was "officially recorded" in the sense that it was written on the traffic citation the officer was preparing to issue and was run through the police computer, *467 it was undisputed that the juvenile promptly and voluntarily recanted the false information and thus did not interfere with the officer's performance of his duties other than by causing a relatively insignificant loss of time.
By contrast, in State v. Townsend, 585 So.2d 495 (Fla. 5th DCA 1991), the fifth district upheld a conviction where the defendant did not recant until after his arrest. The court's reasoning also focused on the harm element, this time adversely:
Townsend, by his constant lying, made the investigation of a simple misdemeanor driving without a license charge far more time consuming than it normally would be.
A circumstance often held to be a distinguishing factor in these obstruction cases is the timing of the arrest, i.e., whether the recantation occurred before or after arrest. See Fripp v. State, 766 So.2d 252, 254 (Fla. 4th DCA 2000) (distinguishing Burdess and C.T. because defendant had been arrested before recanting); In the Interest of J.H., 559 So.2d 702, 703 (Fla. 4th DCA 1990) (distinguishing C.T. because defendant had been arrested before recanting); but see Steele, 537 So.2d at 712 (reversing conviction despite fact that recantation was made after arrest).
In this case, the child corrected the false information before he was formally arrested. Although one officer testified that it took him ten to fifteen minutes to get the juvenile's true name, there was no official recording of the false information and no harm was shown beyond the time expenditure. Under these circumstances, the motion to dismiss should have been granted.
Reversed and Remanded.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] See section 569.11(1), Florida Statutes (2004) ("It is unlawful for any person under 18 years of age to knowingly possess any tobacco product.").